ON the 17th of October 1817, Demise Fishli filed her bill against John Fishli, in which she alleges that some time in that year she became engaged to marry flie defendant, whilst residing in Louisville in this state; that, at the request of the defendant, she and *338 her parents removed to Jeffersonville in the state of Indiana, where the marriage was solemnized between her and the defendant, by a priest residing in this state, of the Roman Catholic persuasion, in virtue of a licence obtained by the defendant from the clerk of Jefferson county, in this state ; that she and her parents, being foreigners, ignorant of the language and laws of this country, Were, in these steps, governed solély by the advice of the defendant; and that, immediately after the marriage Was solemnized, he deserted and abandoned hex*, and has not returned to her, but gives out iu speeches, that their marriage is void, and falsely charges' her with having been unchaste. She alleges that he is possessed of considerable real estate, in this state and Indiana, and a large amount of personal estate, consisting in cash bonds, notes and other securities ; all of which she calls upon him to disclose, and prays for a decree for alimony, and for general relief.
To- this bill the defendant demurred, generally; and in this state the cause remained until the 13th of November 1819, when the complainant filed an amended bill, charging, that since the marriage stated in the original bill, the defendant has abandoned her' for the space of two years; that during that time, although living in the same house, he has neither spoken to her nor made any provision for her maintenance, but has reviled, hari’assed and persecuted her in every way in his power; and she therefore prays, in addition to the prayer of her original bill, for a divorce.
On a subsequent day of the same term, she filed a further amendment to her bill, charging, that the defendant, who now resides in the state of Indiana, is so exasperated against her, and is so destitute of justice and humanity, as to deprive her, if in his power, of even the necessai’ies of life ; that he had contributed nothing to her support since their intermarriage, and that she verily believed that he would sell, secrete, convey away or otherwise dispose of his real and personal estate, so as to render nugatory and ineffectual the future orders and decrees of the court, allowing her a reasonable part of his estate; and she asked and obtained an order restraining him from doing so, as to part of his estate in Louisville, and a further order’, that he should pay to her four hundred dollar’s per annum, in quarterly payments.
*339 At the next term of the eourt the defendant answer. <ad. Of his answer, which is extremely prolix, it is difficult to give a correct epitome. Much of it, however, is not pertinent to the matter in controversy, and need not be noticed. He admits the marriage, as stated in the bill; denies that it was his intention to have it irregularly or insufficiently celebrated ; says that he had anticipated much happiness in the married relation with the complainant; but these anticipations were predicated, as he alleges, upon her possession of virgin purity, and that but a short time had elapsed after their marriage, when, unhappily, the illusion vanished, and the idea of constupration obtruded itself upon his mind. He states that he became convinced, perhaps erroneously, that she was not possessed of that attribute of female character, in which its excellence consists, and he would have been gladly undeceived ; but he charges that no practicable mode of undeceiving him would be submitted to by her or her friends, and he could not agree to become a quiescent, good natured, easy, convenient husband. He denies having treated her with severity or barbarity ; and although he admits he left her shortly after their marriage, yet he alleges that he returned to Jeffersonville in Indiana, where he left her, within less than six months thereafter; and she was not there, nor has he seen her there since. She resides, he alleges, in Louisville in this state, and his permanent place of residence is near Jeffersonville in Indiana; and he i» instructed to say, that it is not his duty to go to her, but her’s to some to him. He does not pretend that he has contributed' any thing towards her support; but says he is willing to administer to her comfort in any way in which he could honorably do it; and in that view, he states that he addressed and sent a let ter. to her, a copy of which he exhibits; and he says that he was then, and still is willing to support her genteelly and comfortably, either in his own house, ór lodgings. If she should prefer it. He denies that she has any cause for a divorce, and insists that if any exists, it is on his part. He alleges that she was destitute of fortune, and that he got no estate by his intermarriage with her, and that he is unwilling that she should turn it into a marriage speculation. He refuses to disclose the particulars of which his estate consists, and sa^b *340 that he cannot estimate his estate, after the payment of his debts and making the deduction for the losses to ■which it is incident, from litigation and reduction of •value, at more than from ten to fifteen thousand dollars ih money. ' ; ■ '
On a final hearing, the circuit court decreed that the marriage should be dissolved, and that the defendant should pay to the complainant five thousand dollars, In three equal instalments of six, twelve and eighteen months; and from that decree both parties havo ap-' pealed to this court. - ■ ■
That the complainant has shown herself entitled to a divorce, there can be no doubt. 'The act of assembly, 1 Dig. Stat. 442, amongst other cases provided for, allowsa decree for a divorce, “in favor of a wife, where her husband shall have left her, with an inten.. tion of abandonment, for the space of two years.” That the defendant left the complainant shortly after their'intermarriage, he admits in his'answer; and it Is proved in the cause, that he avowed his intention of never-living with her, and in fact he never has, although more than two years had elapsed before shé claimed her right to a divorce, and more than two have elapsed since. , It is true, that he states that he re-' turned to-the place where he left her, within less than six months thereafter, and did not find her there; but surely she was not bound to remain at the precise spot where he had left her. Destitute of fortune. as he admits her to have been; and unfurnished by him with the means of subsistence, necessity would and must have compelled her to seek for those means wherever they might be accessible. But he does not allege that he returned to the place where he left her, withanintention to live with her and provide for her, or even with an expectation of finding her there. On the contrary, it is apparent from his own statement, that she must, in the mean time, have come to Kentucky ; and his return to Indiana, we would infer, was influenced more by a desire to avoid, than to meet her. It is obvions; then, that he has left her, with an intention of aban-1 donment, for the space of two years; and, according to the letter of the act, she has shown herself entitled to a divorce. Nor do we apprehend that the other matters relied on in the answer of the defendant, in avoidance of her right, are calculated to rebut or de *341 feat it. The charge which lie insinuates against her chastity, wohldnot, were it true, be sufficient for that purpose; for it does not amount to a charge of adultery, or of incontinence to him ; and less than that would not he sufficient to.jhs'tify him. But justice re. quires us to say, that the insinuation is wholly unsupported by á particle of proof. There is nothing even to cast upon her character in that respect, the slightest shade of suspicion; and wefeel bound, therefore, to pronounce the charge utterly without any foundation in truth. - ....
• Nor do we think that the offer made in the letter he exhibits, and afterwards repeats in his answer* of sup. porting her in his own house or elsewhere, calculated to defeat her right to a divorce. The letter is dated a few weeks before the lapse of two years from the time he had left her ; and if the offer had been of a character, arid made in a manner which she ought to have accepted, it would have been entitled to great consideration, if not to conclusive,effect; but we Cannot admit that the offer -was of such-a character, or made in such a manner as she ought to have accepted. The offer was not to live with her in the relation of husband and wife; and as she was, by the nature and tertris of the marriage contract* entitled to stand in that relation to him, she was not bound to ‘accept of an offer to stand in any other relation. But the manner in which the offer was made is no less objectionable than the matter of it; for, instead of candidly acknowledging the wrong which he had done her, and promising to atone for it, as in justice he ought to have done, he accompanies the offer he makes with the same groundless insinuations against her chastity, which he repeals in his answer; and, instead of making the offer through the medium of some friend of hers, it is sent, as fardas appears, by a stranger, without any instructions to - attempt conciliation. ■ The whole circumstances, in fact, evince that the offer was made, not with a sincere wish that it should be accepted, but that it was in truth a mere artifice, devised with the hope Of thereby defeating the right of the complainant to a divbrce, which, in the lapse of a few weeks, would be complete. The offer, as repeated in the answer,, is liable to the most of the objections which we have ab-ready stated; hut it is, moreover, liable to the object *342 tion that it comes too late, and Is therefore entitled to no weight. The defendant had then abandoned the complainant for more than two years, and her right, under the act, bein ■ complete, she was not bound to accept the oifer, if í¿ had been otherwise unexceptionable.
We are, therefore, of opinion that the circuit court was correct in decreeing a divorce; but we think that court erred in decreeing to the complainant the gross sum of five thousand dollars. The 7th section of the act under which thesp proceedings were had, provides that “ the court pronouncing the decree of divorce shall regulate and order the division of the estate, real and personal, in such way as to them shall seem just and right, having due regard to each party, and the children, if any; Provided, however, that nothing herein contained shall be construed to authorise the court to compel either of the parties to divest himself br herself of the title to the real estate.”
Now, it is obvious at first blush, that this provision of the act requires the estate, real and personal, to be divided in specie or kind, and that a gross sum of money cannot be decreed as á substitute for such division. If, indeed, the estate consists of money, or part money, a proportion of that may be decreed ; for that wrnuld he a division in kind.
What should be the proportion of each party in the division, is left by the law in the discretion of the court. The subject is perhaps not susceptible of any general rule, and it is pretty certain that the legislature did not intend lhatit should be subject to any, or they would haveprovided therule, and not left the matter in the discretion of the court. This case is one in which we think the court ought to decree as great a proportion to the wife, ag any which could occur, would authorise. The parties are without children, and the wrong done by the defendant,' by deserting the complainant, is groundless and" without pretext. We think she ought to be decreed the use, for life, of one third of his real estate, and a moiety of his .personal estate.
With respect to his personal estate, there is some, difficulty. There is no proof of his having any personal estate, except money; and with respect to the. amount of that, the proof is indefinite ; but as he has refused to disclose it by his answer, the evidence ought *343 to be taken most strongly against him. it Is proved that his average deposits per month, in the Louisville Branch Bank, during the years 1816, 1817 and of 1818, were from three to twelve thousand dollars^ and the largest balance to his credit, at the end of any one month, was seven thousand six hundred dollars. That sum, we apprehend, we may safely presume he owned at that time; and as he is not shown to have lost it, or to have converted it into real or personal estate, the presumption must be, that he is still the owner of that amount of money. The one half thereof being three thousand eight hundred dollars, he should be decreed to pay to the complainant, and commissioners should be appointed to allot to her the use, for life, of one third of his real estate.
The majority of the court are of opinion, that, in the division of the real estate, the commissioners must be confined to that within? this state ; from which Judge Mins dissents, being of opinion that the commissioners ought to take into the estimate the real estate in Indiana.
The decree of the circuit court must be reversed, and the cause be remanded, for a decree to be there entered in conformity with this opinion, and such other decrees and orders made herein as may be agreeable to equity.
The defendant in the circuit court must pay the costs of both appeals.