PENCE
*vs*
PENCE.

---

CHANCERY.

*Case* 108.

## Pence *vs* Pence.

ERROR TO THE NELSON CIRCUIT.

*Divorce. Allimony.*

June 9.

JUDGE BRECK delivered the opinion of the Court.

Case stated in the bill.

JACOB PENCE filed this bill seeking a divorce from his wife, Ann, alledging, as the sole ground, that she had without cause or provocation abandoned him for the space of one year.

Answer and cross bill of the defendant.,

The defendant answered setting forth the circumstances, under which she had left the house of the complainant, denying that she had done it without cause, and that she had not refused to return and live with him; resisting a divorce, and making her answer a cross bill, and praying that in the event a divorce should be granted as sought, an equitable portion of the complainant's estate might be decreed, or suitable provision made for her.

Decree of the Circuit Court.

The Circuit Judge granted the relief sought by the complainant, and decreed the defendant all the estate, which she owned at the time of her intermarriage.

The defendant has appealed to this Court, and cross errors are assigned by the complainant.

PENCE vs PENCE.

So far as the divorce is concerned this Court has no revisory jurisdiction, and no effort is made to disturb the decree.

The Court of Appeals has no power to reverse a decree for a divorce.

But so far as it regards the claims of the wife, to a portion of the complainant's estate, or for a support, this Court, as has been repeatedly decided, has jurisdiction, and in that respect each party complains of this decree.

A very concise statement of some of the most prominent and important facts appearing in the record, will show the merits of the defendant's claim.

Prominent facts appearing in the record.

It appears that the complainant, a widower with five children, in 1835 intermarried with the defendant, then Ann Ruble, a maiden lady, between forty five and fifty years of age, as may be inferred from the facts in the cause. The parties lived together in harmony till 1842, when the defendant withdrew from the church, of which she and her husband had been members, and united herself with a church of a different denomination Shortly after this event the complainant displayed much feeling and prejudice against the church to which his wife had attached herself, denouncing and reviling it in terms tending very much to excite and wound her feelings. The previously existing harmony between the parties was from this and other causes destroyed. The complainant commenced complaining and finding fault with his wife, in reference to divers little domestic matters, in which her conduct was proper, prudent and blameless. He manifested an apprehension that she might survive him, and thus come in for what he thought too large a share of his estate, and more especially as she was permitted to manage in her own way the little estate she possessed at the time of their marriage. He expressed fears that she might become helpless and an expense to his estate. He finally informed her that unless she abandoned the church, of which she was then a member, they would have to separate. At length in March 1844, the defendant harrassed and excited by the unkind treatment of her husband, by his consent and greatly, as very clearly appears, to his gratification, left him.

In view of the whole case we come to the conclusion that he was desirous to get clear of her. He so expressed himself shortly after the separation and within a few days began to make arrangements for a divorce. It is evident, we think, he sought by his unkindness in reviling her church and her ministers, by telling her she must quit it, or they could not live together, and by his causeless complaints of her in other respects, to render her situation unhappy and miserable, and in that way to drive her from his house.

It is true there is some testimony that shortly after filing his bill, which was as soon as the year had expired after the separation, he met with the defendant and asked her to return and live with him, but the presumption is almost conclusive that he made the proposition with a view more effectually to attain the object of his suit by her declining it, as she did, and not with a desire that she might accede to it.

As further evidence that he desired the separation and was instrumental in effecting it, and for mercenary motives, he admits in his answer to defendant's cross bill, that one object he had in suing for a divorce was to guard against her claim to dower in his estate, should she survive him.

The character of the defendant as an industrious, managing, economical and prudent wife is abundantly sustained by the testimony. The complainant spoke of her before and even after the separation, in the strongest terms of commendation.

In view then of the character of the defendant, and regarding the separation as desired and sought by the complainant, probably from mercenary motives; and brought about by him, by his improper and unkind treatment, we think, he should not be permitted to render it available without being required to make ample provision for her support.

The estate of the wife, secured to her by the decree, is a life estate in fifty acres of land, the annual rent of which is estimated at between $30 and $40, about $500 in cash or cash notes, besides some household furniture. No portion of this property or fund appears to have been de-

cived from the estate of the complainant, or in other words, it all belonged to the defendant at the intermarriage, with the exception of a portion of the cash fund, which had been increased by the interest, and probably by some part of the rent of the defendant's land. The whole value of the defendant's estate may be estimated at $1,000, and the annual income at about $60.

The complainant's estate is estimated from $12,000 to $15,000, consisting mainly of land and slaves.

In determining what sum should have been decreed the defendant out of the complainant's estate, we have had some difficulty. If it were permissible to estimate her claim by the actual services rendered the complainant, as shown by the testimony, we should have had less difficulty in coming to a conclusion. Few women could establish a higher character as an industrious, economical, managing housekeeper. She was also, what the witnesses deem exceedingly rare, a kind, affectionate and excellent step-mother. Her services, so far as they can be estimated in money, by intelligent witnesses, are estimated at from $100 to $150 a year. Such a criterion to determine the claims of the wife would, however, be often unjust and degrading.

In view of the whole case, we have come to the conclusion, that in addition to what was regarded as the defendant's own or separate estate, and which was decreed her, the complainant should have been decreed to pay her $750. This sum, with her own estate, we think, would afford her a comfortable support during life. We have been governed, to some extent, in fixing the amount, by the consideration that no justifiable cause, in legal contemplation, existed for the separation. The only objection to the decree, on the part of the complainant is, that too large an amount was decreed the defendant. That objection has already been disposed of.

The decree is reversed, or so much thereof as regards the claim of the defendant for a support, and the cause remanded, that a decree may be rendered as herein indicated.

*Grigsby* for plaintiff: *B. Hardin and N. Wickliffe* for defendant.

PENCE
*vs*
PENCE.

The husband obtained a decree of divorce against his wife, and on her cross bill she had a decree for the property she had at the marriage, worth about $1000, his estate consisting of land and slaves, worth 12 or $15-000—Held that she should have a decree for $750 in addition, out of the estate of the husband.