CASE 66.—ACTION BY LENA HOOE AGAINST ANSEL HOOE
     FOR DIVORCE AND ALIMONY.—April 17.

## Hooe v. Hooe

Appeal from Boyle Circuit Court.

W. C. BELL, Circuit Judge.

From a judgment dismissing her petition the
plaintiff appeals.  Reversed.

1. Divorce—Affliction of a Loathsome Disease—Condonement—The
   affliction of a husband of a loathsome disease, which is a
   continuing offense, that may last for years and may grow
   more malignant with age, is not that class of matrimonial
   derelictions that may be condoned by the innocent party
   so as to estop her from asserting her legal rights when it
   becomes necessary to apply to the chancellor for redress or
   protection.
2. Cruel and Inhuman Treatment—Settled Aversion—Under the
   statute it is that species of cruel and inhuman treatment
   that indicates a settled aversion to the wife as permanently
   destroys her peace or happiness, and this character of
   cruelty may habitually manifest itself in various ways that
   fall short of assault or bodily injury and not attended with
   apprehension of violence or danger, and in the nature of the
   case, each complaint under this statute must be determined
   by the facts as they are presented.
3. Alimony to Wife and Child—Attorney's Fees—On the question
   of alimony to the wife in granting her a divorce, where she
   has no estate, where it appears that the husband owns real
   estate worth $13,000, $3,000 for herself, $500 for her infant
   child and $500 attorneys' fees, was a fair allowance.

E. V. PURYEAR and ROBERT HARDING for appellant.

Our contention is:
1. The offense of having at the time of marriage or contracting
after marriage a loathsome disease, cannot as a matter of law be
condoned.

2. Appellant as a matter of fact never condoned this offense if condonation were possible.

3. Appellant was entitled under the proof to a divorce on the ground of cruel and inhuman treatment.

4. The custody of her child should be given to appellant and a proper allowance made to her out of appellees estate for the support of herself and child.

## AUTHORITIES CITED.

Ryder v. Ryder, 44 Am. State Reports, 833; Bishop on Marriage, Divorce, vol. 2, sec. 1026; Gooding v. Gooding, 20 Ky. Law Rep., 957; Thornberry v. Thornberry, 4 Litt. 452; Beall v. Beall, 80 Ky., 676; McAlister v. McAlister, 15 Ky. Law Rep., 750; Holt v. Holt, 6 Ky. Law Rep., 661; Trapp v. Trapp, 20 Ky. Law Rep., 336

E. H. GAITHER for appellee.

1. I submit that under the ruling of the court in this State as well as other states the offense charged in the petition may be condoned.

2. That if two months cohabitation with a positive knowledge of the wife of the existence of the disease, visiting and receiving visits in the meantime, showing their affection for each other in many ways, is not conclusive of forgiveness then twenty years of such conduct could not be.

3. The charge of such cruel and inhuman reatment by the husband as to show a settled aversion to the wife is not proven.

## AUTHORITIES CITED.

Kentucky Statutes, section 2120; Fishli v. Fishli, 12 Ky., 337; Griffin v. Griffin, 47 Ky., 120; Cyclopedia of Law and Procedure, vol. 14, page 639; Wait's Actions and Defenses, vol. 2, page 593; Williamson v. Williamson, 1st Johns., ch. 488; Quincy v. Quincy, 10 N. H., 272; Twyman v. Twyman, 27 Mo., 383; Dilliber v. Dilliber, 9 Conn., 233; Beeby v. Beeby, 1st Hagg. Ecc., 789; Durant v. Durant, 1st Hagg. Ecc., 783; Odum v. Odum, 36 Ga., 286; Turnbull v. Turnbull, 23 Ark., 615; Clark v. Clark, 9 Mass., 331; Young v. Young, 17 Ill., 313; Auld v. Auld, 16 N. Y. Suppl., 303; Reheart v. Reheart, 25 Pacific, 775; Wilson v. Wilson, 16 R. I., 122.

OPINION OF THE COURT BY JOHN D. CARROLL, Commissioner—Reversing.

From a judgment dismissing her petition for divorce and alimony and the custody of her child, the appellant, who was plaintiff in the court below, prosecutes this appeal.

She sought a divorce upon two grounds: First that at the time of the marriage, appellee had a loathsome disease, and concealed from her the existence thereof; and, second, that he habitually behaved toward for not less than six months in such a cruel and inhuman manner as to indicate a settled aversion to her or to permanently destroy her peace or happiness. It appears from the record that these parties were married in January, 1903; the appellee being then about 21 years of age, and the appellant about 18 years. In October, 1903, a boy child was born of the marriage; in April, 1904, a final separation took place; and in June, 1904, this action was instituted. In his answer the appellee admits at the time of his marriage he had a lothsome disease, but avers that he was unaware of the fact or of the existence thereof, and that shortly after his marriage he and his wife discovered the fact, and that she abandoned him and refused to live with him, but afterwards came back to his home and forgave and condoned his offense, and lived and cohabited with him from the time of her return until the separation, which he averred was without fault on his part. He denied that he at any time treated her in a cruel and inhuman manner, and averred his affection for her and the child, and his willingness and desire that they return to his home. The married life of this couple was

Hooe v. Hooe.

brief and unhappy, and the facts in some particulars
are quite conflicting; but a careful reading of it satis-
fies us that the conduct of appellee towards his wife
was not such as it should be, and that she is entitled
to the relief prayed for in her petition.

The first question that presents itself is whether
or not his wife condoned or could condone the offense
of which he confesses he was guilty by living with
him after knowledge upon her part of the fact that
he had a loathsome disease. The statute (section
2117, cl. 4) provides that a divorce may be grated
to a party not in fault for "concealment from the
other party of any loathsome disease existing at the
time of marriage or contracting such afterwards,"
and further provides that "living in adultery with
another man or woman or adultery by the wife or
such lewd lascivious behavior on her part as proves
her to be unchaste, shall be grounds of divorce,"
and section 2120 declares that "cohabitation as man
and wife after a knowledge of adultery or lewdness
complained of shall take away the right of divorce
therefor." The statute does not in express terms
provide that any of the other causes for which a
divorce may be granted may be condoned and it is
therefore insisted that the condonation that denies
a right of action is limited to cohabitation as man
and wife after a knowledge of adultery or lewdness,
and does not embrace the ground upon which a
divorce is sought in this case. Without determin-
ing the question whether or not condonation is
limited to these two offenses, we are disposed to
place the opinion upon the higher and broader ground
that the offense charged in this action is one that the
wife cannot condone by cohabiting with her husband,

so as to deny her the right to obtain from him a divorce for this cause. Either a husband or wife might be willing and anxious to condone a single act or a series of acts of gross misconduct or cruel treatment, or other specific violation of the marriage obligation; but the affliction of a loathsome disease does not come within this rule. It is a continuing offense—not a distinct or separate grievance that may be forgotten or forgiven in a day or week, or a species of misconduct that affectionate treatment and gentle behavior might obliterate. Condonation is defined by Bishop in his work on Marriage, Divorce and Separation, (volume 2, sections 269, 308), "as the remission by one of the named parties of an offense which he knows the other has committed against the marriage on the condition of being continually afterward treated by the other with conjugal kindness. All condonation, especially the implied, is upon the condition, both that the offense shall not be repeated, and likewise that continually afterward the party forgiven shall treat the other with conjugal kindness, whereupon a breach of the condition revives the original right of divorce." These citations from this standard work illustrate the idea that a continuing offense, one that may last for years, that may grow more malignant with age, is not in that class of matrimonial derelictions that may be condoned by the innocent party so as to estop her from asserting her legal rights.

There is reason and justice in the doctrine that the injured spouse may, by his or her voluntary acts committed with a full knowledge of all the facts, condone a vice or crime. The drunkard may, and often does, reform and become a useful and honest citizen, a

Hooe v. Hooe.

good husband, and a kind father. A man who commits a crime may repent of his wickedness and lead an upright and valuable life. The husband, who in a moment of inexcusable passion behaves in an unkind and cruel manner towards his wife, may not be guilty of a like offense; and in these and other instances that might be cited, where a reconciliation is effected and the condonation of the injured party is complete, nothing may again occur to disturb the happiness of the home, or interfere with the felicity of the domestic relation, nor will children born of the marriage be afflicted in mind or body by the causes which once disrupted the marital state; but, when either one party or the other has contracted a loathsome disease that may be for all time menacing to the health, dangerous to the life, and distressing to the peace of mind and happiness of the parties, these reasons can have no application, and if, in an effort to avoid a threatened scandal, or prompted by a desire to attempt a reconciliation, or for other motives that the circumstances and surrounding may create, the wife should temporarily return to her husband, and make a fruitless endeavor to resume her duties and station as wife and mother, she ought not to be thereafter denied the power of asserting her legal rights, if it becomes necessary to apply to the chancellor for redress or protection. It may have been declared to be the law in other jurisdictions that offenses such as this can be condoned, but it has never been so ruled in this State; and, as said in Joseph Muir v. Mary E. Muir, 92 S. W., 214, 28 Ky. Law Rep., 1355, where a like defense was made, "for a diseaesd spouse to inoculate the other with a dreadful venerial ailment, possibly curable, possible not,

and then claim a condonement because further cohabitation was indulged in after the fact, is but an aggravation of the wrong." In this case, not only was the young wife and mother inoculated with this disgusting disease, but the little baby was tainted with it at his birth, and when only a few days old was taken from his mother's arms and carried to a distant place to be treated for the malady, and the mother and child were separated at a period of time in the life of each when constant association was indispensable to the happiness of one and the health and well-being of the other; nor does it appear from the record that either—or appellee—has yet been cured of the disorder.

It is likely that appellee, when he married, believed that he was well; but his innocence in this respect does not affect the question here presented, as his defense is that, although he had this disease, his wife cannot complain of it, because she continued to live with him for several weeks after discovering the fact. During the life of his mother, and when his wife was with her family, during and after her confinement, his conduct was not that of a good husband, if the only persons who testify concerning his behavior can be believed, and their evidence is not contradicted. Many acts, each in itself little, are related, illustrating his lack of feeling and respect for his wife. When his mother died in January, 1904, he requested a Baptist minister, a friend of the family, to go and see his wife, and entreat her to return, promising that he would be a kind and faithful husband, and would accord her the treatment due a wife. After a visit from the minister she did return to his home, and remained there until April.

This minister also testifies that in April, shortly before the final separation, appellant, in company with the half-brother and sister of appellee, came to see him and again solicited his good offices in an effort to induce appellee to accord to his wife better treatment. This circumstance, and others that are disclosed, bear ample testimony to the fact that appellee's behavior toward his wife was calculated to permanently destroy her peace and happiness, and in the meaning of the statute was cruel. It is not necessary that the husband should be a wife beater, or that his wife should apprehend violence at his hands. These and other specific acts of ill treatment are made a ground for divorce by clause 3, which reads: "Such cruel beating or injury, or attempt at injury, of the wife by the husband, as indicates an outrageous temper in him, or probable danger to her life, or great bodily injury from her remaining with him." Under the statute here invoked, it is that species of cruel and inhuman treatment that indicates a settled aversion to the wife, as permanently destroys her peace or happiness; and this character of cruelty may habitually manifest itself in various ways that fall short of assualt or bodily injury, and are not attended with apprehension of violence or danger, and in the nature of the case each complaint under this statute must be determined by the facts as they are presented. Beall v. Beall, 80 Ky., 675, 4 Ky. Law Rep., 652; Davis v. Davis, 86 Ky., 32, 9 Ky. Law Rep., 300, 4 S. W., 822. We appreciate fully the force of the argument of counsel for appellee that he was many times sorely tried by unwelcome and too frequent visitations from the family of his wife, and

it is doubtless true that the irritating presence and meddlesome interference of these officious, but probably well-disposed, relatives was a fruitful source of annoyance and vexation to appellee; but this did not justify or excuse his conduct towards his wife, who appears in the record as a pure, modest, and amiable young woman.

In respect to the allowances asked for, it appears that the real property of appellee is reasonably worth $13,000, and his wife has no estate; and under all the circumstances we have concluded that it will be better and more satisfactory to both parties if a lump sum is awarded, as the husband will then know what he must pay, and the wife what she will have for her support. Gooding v. Gooding, 104 Ky., 755, 47 S. W., 1090, 48 S. W., 432, 20 Ky Law Rep., 955. We think $3,000 for the wife, $500 for the child, and $500 attorney's fees a fair allowance, and the court will make and enforce such orders as may be necesary to secure the payment of these sums. For the present, the mother is entitled to the exclusive custody and care of the child, with reasonable and proper opportunity for visits by its father; the question of its future disposition to be kept under the control of the court.

The judgment is reversed, with directions for further proceedings in conformity to this opinion.

brief and unhappy, and the facts in some particulars are quite conflicting; but a careful reading of it satisfies us that the conduct of appellee towards his wife was not such as it should be, and that she is entitled to the relief prayed for in her petition.

The first question that presents itself is whether or not his wife condoned or could condone the offense of which he confesses he was guilty by living with him after knowledge upon her part of the fact that he had a loathsome disease. The statute (section 2117, cl. 4) provides that a divorce may be grated to a party not in fault for "concealment from the other party of any loathsome disease existing at the time of marriage or contracting such afterwards," and further provides that "living in adultery with another man or woman or adultery by the wife or such lewd lascivious behavior on her part as proves her to be unchaste, shall be grounds of divorce," and section 2120 declares that "cohabitation as man and wife after a knowledge of adultery or lewdness complained of shall take away the right of divorce therefor." The statute does not in express terms provide that any of the other causes for which a divorce may be granted may be condoned and it is therefore insisted that the condonation that denies a right of action is limited to cohabitation as man and wife after a knowledge of adultery or lewdness, and does not embrace the ground upon which a divorce is sought in this case. Without determining the question whether or not condonation is limited to these two offenses, we are disposed to place the opinion upon the higher and broader ground that the offense charged in this action is one that the wife cannot condone by cohabiting with her husband,

so as to deny her the right to obtain from him a divorce for this cause. Either a husband or wife might be willing and anxious to condone a single act or a series of acts of gross misconduct or cruel treatment, or other specific violation of the marriage obligation; but the affliction of a loathsome disease does not come within this rule. It is a continuing offense—not a distinct or separate grievance that may be forgotten or forgiven in a day or week, or a species of misconduct that affectionate treatment and gentle behavior might obliterate. Condonation is defined by Bishop in his work on Marriage, Divorce and Separation, (volume 2, sections 269, 308), ''as the remission by one of the named parties of an offense which he knows the other has committed against the marriage on the condition of being continually afterward treated by the other with conjugal kindness. All condonation, especially the implied, is upon the condition, both that the offense shall not be repeated, and likewise that continually afterward the party forgiven shall treat the other with conjugal kindness, whereupon a breach of the condition revives the original right of divorce.'' These citations from this standard work illustrate the idea that a continuing offense, one that may last for years, that may grow more malignant with age, is not in that class of matrimonial derelictions that may be condoned by the innocent party so as to estop her from asserting her legal rights.

There is reason and justice in the doctrine that the injured spouse may, by his or her voluntary acts committed with a full knowledge of all the facts, condone a vice or crime. The drunkard may, and often does, reform and become a useful and honest citizen, a

good husband, and a kind father. A man who commits a crime may repent of his wickedness and lead an upright and valuable life. The husband, who in a moment of inexcusable passion behaves in an unkind and cruel manner towards his wife, may not be guilty of a like offense; and in these and other instances that might be cited, where a reconciliation is effected and the condonation of the injured party is complete, nothing may again occur to disturb the happiness of the home, or interfere with the felicity of the domestic relation, nor will children born of the marriage be afflicted in mind or body by the causes which once disrupted the marital state; but, when either one party or the other has contracted a loathsome disease that may be for all time menacing to the health, dangerous to the life, and distressing to the peace of mind and happiness of the parties, these reasons can have no application, and if, in an effort to avoid a threatened scandal, or prompted by a desire to attempt a reconciliation, or for other motives that the circumstances and surrounding may create, the wife should temporarily return to her husband, and make a fruitless endeavor to resume her duties and station as wife and mother, she ought not to be thereafter denied the power of asserting her legal rights, if it becomes necessary to apply to the chancellor for redress or protection. It may have been declared to be the law in other jurisdictions that offenses such as this can be condoned, but it has never been so ruled in this State; and, as said in Joseph Muir v. Mary E. Muir, 92 S. W., 214, 28 Ky. Law Rep., 1355, where a like defense was made, "for a diseaesd spouse to inoculate the other with a dreadful venerial ailment, possibly curable, possible not,

and then claim a condonement because further cohabitation was indulged in after the fact, is but an aggravation of the wrong." In this case, not only was the young wife and mother inoculated with this disgusting disease, but the little baby was tainted with it at his birth, and when only a few days old was taken from his mother's arms and carried to a distant place to be treated for the malady, and the mother and child were separated at a period of time in the life of each when constant association was indispensable to the happiness of one and the health and well-being of the other; nor does it appear from the record that either—or appellee—has yet been cured of the disorder.

It is likely that appellee, when he married, believed that he was well; but his innocence in this respect does not affect the question here presented, as his defense is that, although he had this disease, his wife cannot complain of it, because she continued to live with him for several weeks after discovering the fact. During the life of his mother, and when his wife was with her family, during and after her confinement, his conduct was not that of a good husband, if the only persons who testify concerning his behavior can be believed, and their evidence is not contradicted. Many acts, each in itself little, are related, illustrating his lack of feeling and respect for his wife. When his mother died in January, 1904, he requested a Baptist minister, a friend of the family, to go and see his wife, and entreat her to return, promising that he would be a kind and faithful husband, and would accord her the treatment due a wife. After a visit from the minister she did return to his home, and remained there until April.

This minister also testifies that in April, shortly before the final separation, appellant, in company with the half-brother and sister of appellee, came to see him and again solicited his good offices in an effort to induce appellee to accord to his wife better treatment. This circumstance, and others that are disclosed, bear ample testimony to the fact that appellee's behavior toward his wife was calculated to permanently destroy her peace and happiness, and in the meaning of the statute was cruel. It is not necessary that the husband should be a wife beater, or that his wife should apprehend violence at his hands. These and other specific acts of ill treatment are made a ground for divorce by clause 3, which reads: "Such cruel beating or injury, or attempt at injury, of the wife by the husband, as indicates an outrageous temper in him, or probable danger to her life, or great bodily injury from her remaining with him." Under the statute here invoked, it is that species of cruel and inhuman treatment that indicates a settled aversion to the wife, as permanently destroys her peace or happiness; and this character of cruelty may habitually manifest itself in various ways that fall short of assualt or bodily injury, and are not attended with apprehension of violence or danger, and in the nature of the case each complaint under this statute must be determined by the facts as they are presented. Beall v. Beall, 80 Ky., 675, 4 Ky. Law Rep., 652; Davis v. Davis, 86 Ky., 32, 9 Ky. Law Rep., 300, 4 S. W., 822. We appreciate fully the force of the argument of counsel for appellee that he was many times sorely tried by unwelcome and too frequent visitations from the family of his wife, and

it is doubtless true that the irritating presence and meddlesome interference of these officious, but probably well-disposed, relatives was a fruitful source of annoyance and vexation to appellee; but this did not justify or excuse his conduct towards his wife, who appears in the record as a pure, modest, and amiable young woman.

In respect to the allowances asked for, it appears that the real property of appellee is reasonably worth $13,000, and his wife has no estate; and under all the circumstances we have concluded that it will be better and more satisfactory to both parties if a lump sum is awarded, as the husband will then know what he must pay, and the wife what she will have for her support. Gooding v. Gooding, 104 Ky., 755, 47 S. W., 1090, 48 S. W., 432, 20 Ky Law Rep., 955. We think $3,000 for the wife, $500 for the child, and $500 attorney's fees a fair allowance, and the court will make and enforce such orders as may be necesary to secure the payment of these sums. For the present, the mother is entitled to the exclusive custody and care of the child, with reasonable and proper opportunity for visits by its father; the question of its future disposition to be kept under the control of the court.

The judgment is reversed, with directions for further proceedings in conformity to this opinion.