## Williamson et al. v. Williamson.

(Decided April 29, 1932.)

W. W. BARRETT, W. K. STEELE, and STRATON & STEPHEN-SON for appellants.

RUSSELL VANOVER, W. A. DAUGHERTY, and O. A. STUMP for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Directing modification of alimony award and affirming.

This appeal is prosecuted from a judgment of the Pike circuit court to reverse that part of the judgment

rendered therein on the 11th of May, 1929, which adjudged that the defendant, Belle Williamson, should recover against T. J. Williamson and W. K. Steele, the receiver of the estate of T. J. Williamson, the sum of $10,000 for alimony.

The facts out of which this judgment originated are as follows:

T. J. Williamson and Belle. Williamson were married some 35 years ago, and two sons were born as the issue of their marriage, both of whom are now upward of 30 years of age. After T. J. Williamson and Belle Williamson had lived together as man and wife for some thirty odd years, the latter few years of which were marred by continuous discord, T. J. Williamson left his home in Pikeville, where he had resided together with Mrs. Williamson, and thereafter lived separately and apart from her in rented quarters of a rooming house.

After this separation, he filed a suit for divorce. Appellant thereafter filed her answer controverting the allegations of his petition, and also made it a counterclaim, in which she sought a divorce from Williamson and asked the allowance to her of alimony.

On September 12, 1928, and prior to the date of filing the petition for divorce, T. J. Williamson made a deed of assignment for the benefit of his creditors, naming W. K. Steele his assignee. W. K. Steele qualified as such, and undertook to administer the assigned estate; but on October 19, 1929, resigned his trust as assignee. Thereupon the estate was by order of the Pike circuit court placed in the hands of W. W. Barrett, commissioner and receiver of the Pike circuit court, who has since been and is now the acting receiver of the assigned estate.

The alimony branch of the case was consolidated with the pending case in said court of W. K. Steele, Assignee, Etc., v. The Commonwealth Life Insurance Co., for the purpose of enabling appellee to collect her judgment for alimony. The order of consolidation precedes the entry of the judgment of divorce and alimony, which directs recovery against the assigned estate.

The creditors of the estate of T. J. Williamson and also T. J. Williamson were granted an appeal from the findings of the court in allowing Belle Williamson the sum of $10,000 alimony.

T. J. Williamson for many years has been engaged in the real estate business in Pikeville, where he also ran a hardware store, and, in addition to such business, was a contractor and builder.

As shown by the receiver's report, on February 19, 1930, he was the owner of real estate of the appraised value of approximately $100,000 and some $1,200 of personal property, and owed an indebtedness of some $90,-000, which included the alimony allowance of $10,000 and costs adjudged Belle Williamson.

The evidence shows that the plaintiff Williamson had bought considerable property just outside of Pikeville, a large portion of which he had subdivided into town lots, and had also built a number of houses in this subdivision, in the course of which development he had incurred indebtedness in making improvements upon and buying the property of from $40,000 to $50,000. The bulk of the sales made by him from such holdings were made during the years 1920 to 1925, and, in conveying these many pieces of property, Mrs. Williamson had joined in deeds thereto with him.

During the last five or six years, their marital relations becoming much strained, Mrs. Williamson refused to further join with Mr. Williamson in making deeds to these lots or houses and lots to purchasers secured by him therefor, with the result, it is alleged, that his ability to dispose of much of his real estate, for which he was heavily indebted, was destroyed. The general depression in business soon following, he was unable to make sales of any of his holdings, which have greatly depreciated in value to an estimated extent of from one-half to two-thirds thereof, though still heavily indebted then in the amount of some $40,000 or $50,000, in addition to other obligations rendering him, he claims, insolvent and leading to his making the assignment, as above mentioned, of his estate for the benefit of creditors.

It appears from an abundance of proof taken herein that at the time of the marriage some 35 years ago of T. J. Williamson and Belle Williamson neither had any property, but each was frugal and industrious, and, by reason of their energy and mutual efforts to make and save, in the course of years they did jointly acquire a considerable estate; that Williamson was a hard working, progressive business man, actively engaged in sev-

eral business enterprises, to the profitable handling of which he was very attentive and resourceful; while his wife was equally as capable in looking after the home, and the renting of her rooms and houses and other business efforts of her own, with the result that she thereby acquired quite a snug saving of some several thousand dollars upon her own account.

It appears, however, that, while the thoughts and efforts of each of them were thus engrossed and devoted to acquiring property, the matter of their marital enterprise was not faring so well, but that friction and discord, money quarrels and antagonisms were ominously growing between them, until during the last several years mutual spite and spleen so marred and ruined their home life that it became a veritable cat-and-dog affair, in which hate, abuse and recrimination became their regular program.

It will serve no good purpose to go into a detailed recital of the many instances of their mistrust and mistreatment of each other during these later years, and of their quarrels, brawls and fights, for which it appears each was greatly to blame and at fault, and each in turn the aggressor therein.

However, as we are without jurisdiction to reverse the judgment of divorce granted herein to the wife upon her counterclaim, we are only now concerned in considering the evidence upon which this divorce was granted, their relative wrongdoing, and the culpability of each with a view to a clearer determination of the propriety and correctness of the alimony award of $10,000 herein adjudged to be paid the appellee from appellant's exhausted and improverished estate.

By the record we find that the plaintiff, T. J. Williamson, both by arguments of his petition and proof made in support of same, alleges and undertakes to show that Belle Williamson, his wife, during the last several years did, over his objection and protest, debase their home by receiving objectionable characters as roomers therein; that she had as boarders women who were lewd, unchaste and ''ruined,'' whom she retained as both inmates of their home and as her social intimates even over his repeated protests and dismissals of them from his house, and not only did she refuse to consider or respect his positive wish and outraged feeling in such matters,

but, in contempt and defiance thereof, would at once bring them back to their home and connive and confederate with them to harm and do violence to him and even to kill him should he further attempt to drive them away or assert control or demand a voice in the character of the home appellee would maintain. It appears by his testimony that upon one occasion appellee had two of these, her questionable intimates and roomers, grab and hold the plaintiff while she struck at him with a meat cleaver. It is further in evidence and by appellant both pleaded and testified that his wife, Belle Williamson, is a woman of violent and outrageous temper and given to such outbursts of insane rage as to endanger and imperil his life and personal safety by longer remaining or living in the home with appellee, and that it was only because of such a situation that he quit his house, where he had so long resided with his wife, and for safety was compelled to seek board and lodging in rented quarters elsewhere in the town. He further pleads and charges that the defendant has been guilty of such misconduct as tends to show lewdness on her part, in that she has permitted unchaste women of low and bad character to live in her house, with whom she drove about until late at night, leaving him and his home for distant places upon missions of misconduct.

These charges are denied by Belle Williamson, both by pleadings and evidence who in turn by the testimony of herself and witnesses state that the plaintiff is a man who has nagged, fussed, and quarreled with her upon all occasions for years; that he was given to coming home in a rage and venting his frenzy in quarreling with and abusing both her and the other inmates of the house; that upon occasions of her refusal to join with him in making deeds to property he wished to sell and convey he was enraged by her refusal, struck her and threatened to kill her, and at times has so endangered her safety by threats and blows as to force her to flee in her nightclothes to the home of her son for her safety, or to have one of her sons return with her and remain all night at her home for the purpose of protecting and shielding her from the menacing wrath of the plaintiff.

The chancellor, it is to be presumed, knowing each of these parties and the credibility of their testimony as well as that of the witnesses and the actual situation of the respective parties, as well as that attempted in the

evidence to be shown and depicted by them, we realize was better able to judge of the relative merits of their controversy than we, and, favored with this advantage, has adjudged relief to the plaintiff upon the grounds of abandonment and cruel and inhuman treatment relied on by appellee. We are of the opinion that there was ample evidence furnished by the record supporting his judgment in granting appellee a divorce, if done only upon the ground of appellant's unproven accusation of lewdness made against his wife, in that such unproven accusations of lewdness and lascivious conduct made against a wife have by this court been held in itself sufficient to constitute cruel and inhuman treatment. Johnson v. Johnson, 183 Ky. 421, 209 S. W. 385; Smith v. Smith, 181 Ky. 55, 203 S. W. 884. However, were the evidence otherwise, and the chancellor's judgment granting a divorce to the wife conceived by us to be in error, which we do not now so conceive it to be, still would we be without authority to disturb the judgment in this respect, in that, under section 950-1 of the Kentucky Statutes, this court is expressly forbidden to reverse a judgment granting a divorce, but it may review the judgment of the circuit court in a divorce case in other respects, such as the custody of children, alimony, etc.

The evidence herein considered by us only for its bearing upon the alimony adjudged shows that the appellee owns a house and lot given or largely given her by the plaintiff and represented by him as worth some $10,000, though doubtless the value of this property too has now much depreciated, and also that the appellee has some other private estate, representing her own earnings; that she is now a woman of some 60 years of age, not robust, and without probable means of income except such as she may derive from her small estate. On the other hand, the appellant is now also old, or nearly 60 years of age, who, under the evidence, is now practically destitute of any estate and property or working capital with which to start anew at this late hour of the day to rebuild his wrecked fortunes. It reasonably appears that his entire estate assigned for his creditors will be insufficient to pay them, or at best leave but a very small amount with which plaintiff can if at all re-enter his business or any business, in which, henceforth, he can earn a reasonable self-support for his age even now upon him.

As we view these parties in their strained relations to each other, there is little reason to believe that any help or succor may be expected to be extended by the appellee to her now aged husband or that any mutual consideration may be expected as a sequel to their many years of quarreling, wrangling, and vengeful mistreatment of each other. These considerations lead us to conclude that the alimony allowance made appellee of $10,000 from appellant's exhausted estate is under these circumstances somewhat excessive. Section 2122, Kentucky Statutes, providing an allowance to a wife out of her husband's estate, is as follows:

"If the wife have not sufficient estate of her own she may, on a divorce obtained by her, have such allowance out of that of her husband as shall be deemed equitable. . . ."

This court in considering a proper award to be made pursuant to the provisions of this statute, in the case of Shehan v. Shehan, 152 Ky. 191. 153 S. W. 243, adopted the principle of law and rule as to this announced by this court in the case of Muir v. Muir, 133 Ky. 129, 92 S. W. 314, 317, 28 Ky. Law Rep. 1355, 4 L. R. A. (N. S.) 909, as to the awarding of alimony, as follows

"In estimating the allowance of alimony, there is no fixed standard. The matter is within the sound judicial discretion of the chancellor. It will be regulated by a number of circumstances that properly enter into the consideration. Among them is the size of the estate of the husband, and its productiveness; his income and earning capacity; his age, health, and ability to labor; the age, health, and station of the wife; and, it may be added, that the particular cause of the divorce may properly enter into the consideration. . . ."

And again to like effect, in Kelly v. Kelly, 183 Ky. 172, 176 209 S. W. 335, 338, the court said :

"As to the amount of the alimony, the proof shows that the wife is entirely without property, and the principle applying, whether the granting of permanent alimony be considered as damages for breach of the marriage covenant, or the exercise of a sound judicial discretion, in providing for the wife

an allowance out of the husband's estate, is that the alimony awarded should be so apportioned as to secure to the wife the same social standing, comforts, and luxuries of life as she would have had, but for the enforced separation, considering the amount of the husband's estate and the care of the children, if any, and the circumstances and cause of the separation, the husband's present and future prospects and his ability to earn money. Muir v. Muir, 133 Ky. 125, 92 S. W. 314, 28 Ky. Law Rep. 1355, 4 L. R. A. (N. S.) 909; Shehan v. Shehan, 152 Ky. 191, 153 S. W. 243; Green v. Green, 152 Ky. 486, 153 S. W. 775. . . ."

"There has never been a hard and fast rule adopted as to what proportion of the estate of the husband should be awarded the wife as permanent alimony; but it is a matter confided to the sound discretion of the chancellor, and each case has been determined upon the special facts and circumstances appearing, and the adjudicated cases show that the allowance has varied from one-fifth to one-half of the husband's estate in cases where divorce has been granted, as will appear from the following cases: Irwin v. Irwin, 107 Ky. 24, 52 S. W. 927, 21 Ky. Law Rep. 622; Muir v. Muir, 133 Ky. 125, 92 S. W. 314, 28 Ky. Law Rep. 1355, 4 L. R. A. (N. S.) 909; McKean v. Brown, 83 Ky. 208; Hawkins v. Ragsdale, 80 Ky. 353, 44 Am. Rep. 483; Fishli v. Fishli, 2 Litt. 338; Lockridge v. Lockridge, 3 Dana, 28, 28 Am. Dec. 52; Thornberry v. Thornberry, 4 Litt, 251; Lacey v. Lacey, 95 Ky. 110, 23 S. W. 673, 15 Ky. Law Rep. 439; Day v. Day, 168 Ky. 68, 181 S. W. 937; Quisenberry v. Quisenberry, 1 Duv. 197; Pemberton v. Pemberton, 169 Ky. 476, 184 S. W. 378; Murray v. Murray, 163 Ky. 546, 174 S. W. 9; Shehan v. Shehan, 152 Ky. 191, 153 S. W. 243; Thompson v. Thompson, 155 Ky. 608, 159 S. W. 1166; Barlow v. Barlow, 90 S. W. 216, 28 Ky. Law Rep. 664; Hooe v. Hooe, 122 Ky. 590, 92 S. W. 317, 29 Ky. Law Rep. 113, 5 L. R. A. (N. S.) 729, 13 Ann. Cas. 214; McClintock v. McClintock, 147 Ky. 409, 144 S. W. 68, 39 L. R. A. (N. S.) 1127; Pence v. Pence, 6 B. Mon. 496."

See also, the later case of Burns v. Burns, 173 Ky. 105, 190 S. W. 683, approving allowance of alimony of as much as one-third or more of the husband's estate.

Influenced and guided by the rule and principle of these authorities, we are of the opinion that the award of $10,000 was excessive, for the reason that such an amount would appear under the evidence as to the value of appellant's estate to be a much larger part and share of it so adjudged than is authorized or approved by either the rule or its reason as is considered and laid down in the cases, supra, regulating the awarding of a share of the husband's estate to the wife as alimony. In awarding such an amount adjudged below to the wife, it could reasonably be expected to follow that the appellee's condition would become much better and superior to that of the appellant, from whose estate she would secure such advantage, and much better than would have been her lot under the existing circumstances of the appellant's apparent insolvency and had they continued to live together under their marriage covenants. We therefore conclude that the alimony allowance to appellee of $10,000 is, for the reasons herein indicated, excessive and should be reduced in its amount to $5,000. The chancellor will accordingly so modify his award of alimony made to appellee as to reduce it to the said amount of $5,000.

The judgment of the lower court in all other respects is affirmed, and cause remanded for proceedings consistent with this opinion.