## Ratliff v. Ratliff.

March 10, 1950.

E. D. Stephenson, Judge.

Hobson & Scott for appellant.

Francis M. Burke for appellee.

CHIEF JUSTICE SIMS—Reversing.

Bill Ratliff sued his wife for divorce on the ground that they lived separate and apart without cohabitation for five consecutive years, and he asked the custody of their 16 year old daughter, Zetta. By an amended petition he charged his wife with cruel and inhuman treatment. Mrs. Ratliff's answer was a denial, and by way of counter-claim she charged her husband with cruel and inhuman treatment and asked a divorce from bed and board, the custody of the daughter and that a reasonable allowance be made for the support of herself and daughter, as well as a reasonable attorney's fee.

The chancellor granted the husband a divorce on the ground that the couple had not lived together as man and wife for more than five years, but allowed Mrs. Rat-

liff alimony in a lump sum of $1000, the use and occupancy of the home owned by the husband, gave her custody of the daughter and adjudged that the husband pay the cost of the action, including a $200 fee for Mrs. Ratliff's attorneys. No specific allowance was made for the daughter but the judgment recites that the father will pay to Zetta on the first day of each month a sum sufficient to support and maintain her, which the father appeared willing to do.

Mrs. Ratliff realizes that this court is without authority to reverse the judgment of divorce and she seeks a review of only so much of the judgment as relates to alimony and the support of the daughter. Bush v. Bush, 245 Ky. 172, 53 S. W. 2d 352; Williamson v. Williamson, 243 Ky. 544, 49 S. W. 2d 337.

Mr. and Mrs. Ratliff married in 1922. At that time she was a widow and he was a widower, and each had one child. To their union two children were born, a son Denny, who is now grown, and the 16 year old daughter, Zetta. During their early married life the couple were not prosperous and Mrs. Ratliff contributed to the support of the family by working at various jobs. In 1933 she was named postmistress at Praise, Ky., at $900 a year, which gradually increased until she was receiving an annual salary of $1800 when she resigned in 1943 on account of ill health. Mrs. Ratliff testified that her husband never gave her any money or clothes and that practically all of her earnings went to the support of herself and family. She produced more than a hundred cancelled checks showing this fact.

Mr. Ratliff testified that for some years he operated a store and his wife was authorized to get therefrom clothing and food for the family; that during the years he was not in the merchandising business he made arrangements with merchants to extend credit to his family; that the expenditures of her own funds by Mrs. Ratliff on behalf of herself and the family were unnecessary and were voluntary upon her part. Merchants who testified in behalf of Mr. Ratliff said that the bills for his family were considerable and he was prompt in their payment.

There is but little conflict in the evidence that the couple got along badly for some eight or ten years prior to this litigation. They did not eat together and seldom

spoke to each other, and Mr. Ratliff invariably cooked his own breakfast. Each testified the fault was that of the other. Mr. Ratliff testified they did not room to-gether, nor did they cohabit for more than five years before this suit was filed; while Mrs. Ratliff testified that in 1946, when their son was home from the army on a furlough, they had a reconciliation and lived together as husband and wife for about a month. Each blamed the other for the fact that they did not cohabit.

The following parts of the testimony impress us most. Mr. Ratliff stated, "I haven't had any love for her for eight or ten years." She was asked on cross-examination:

"Q. Mrs. Ratliff, are you now of the opinion that Mr. Ratliff is no good? A. No sir, I think he is all right.

"Q. He is a good man? A. Yes sir, he is all right." When Mr. Ratliff filed this suit she asked him to drop it, to which he replied, "I said I can't now, I've got too much money tied up, and I told her they (his attorneys) did take it for $500."

The testimony to which we have just referred convinces us that Mr. Ratliff was far from being without fault in the unfortunate situation which arose between them, and that the chancellor instead of granting the husband an absolute divorce, should have granted the wife a divorce from bed and board. We have several times written that where a couple live together in the same house and hold themselves out as husband and wife, the fact that they did not indulge in sexual relations for five years would not entitle them to a divorce under KRS 403.020. Gates v. Gates, 192 Ky. 253, 232 S. W. 378; McDaniel v. McDaniel, 292 Ky. 56, 165 S. W. 2d 966; Colvin v. Colvin, 300 Ky. 781, 190 S. W. 2d 473. We have also written that although a divorce is granted a husband on the ground of five years' living apart from his wife, this does not prevent the chancellor from allowing alimony where the proof shows that the wife is not responsible for the separation. Sandlin v. Sandlin, 289 Ky. 290, 158 S. W. 2d 635; Cotton v. Cotton, 306 Ky. 826, 209 S. W. 2d 474.

Mr. Ratliff testified he owned property worth $15,-000 and that his salary and his income aggregate some-

454

thing over $500 per month. Mrs. Ratliff is 53 years of age, is broken in health and had only about $800 when she testified. Instead of allowing her lump sum alimony of $1000, the chancellor should have allowed her alimony of $125 per month in addition to the use and occupancy of the home, and should have directed Mr. Ratliff to pay his wife $50 a month for the support of their 16 year old daughter, whose custody was awarded to the mother. See Glenn v. Glenn, 255 Ky. 422, 74 S. W. 2d 472; Lockard v. Lockard, 305 Ky. 656, 205 S. W. 2d 317, for the formula courts use in fixing alimony. Mr. Ratliff will pay these amounts to Mrs. Ratliff commencing with the date the judgment was entered from which this appeal was prosecuted. The alimony being payable in installments, the circuit court has authority to modify same in the event the conditions of the parties change. Jones v. Jones, 239 Ky. 153, 29 S. W. 2d 262; Renick v. Renick, 247 Ky. 628, 57 S. W. 2d 663.

The judgment is reversed for the entry of one consistent with this opinion.