Margaret Elma YORK, Appellant,

v.

Gifford Thomas YORK, Appellee.

Court of Appeals of Kentucky.

June 17, 1955.

George R. Smith, Lexington, for appellant.

No appearance for appellee.

MOREMEN, Judge.

This is an appeal from a judgment dismissing appellant Margaret York's complaint for divorce in which she had alleged that the appellee Gifford York had treated her in a cruel and inhuman manner. She also had requested custody of their only child who was then 12 years of age. Appellee's answer consisted of a traverse and counterclaim based upon the same statutory ground. The case came on to be heard before the Chancellor; the parties had introduced witnesses in their behalf; the circuit court now describes what then happened: "After Mr. York, the defendant, had finished testimony I took Thomas, the son of the parties into chambers and asked him a few questions as may be found in my Findings of Facts in the Record. The child stated to me that his father and mother were at the time of the hearing living in and occupying the same apartment which consisted of living-room, bedroom, bath and kitchen. He stated that his mother had been sleeping on a couch in the living-room and his father occupied the bedroom. Upon hearing this I immediately informed the attorneys that we could not proceed with the trial of the case as the parties were living together in the same quarters and that under these circumstances the Court could not entertain further jurisdiction in the case. The attorneys conceded the parties were, together with their child, sharing the same apartment but that the husband and wife were not sharing the same bed, but using separate but connecting rooms for sleeping."

The above holding squarely presents to this court the question as to whether or not it is necessary in all cases for the parties to be living in separate, distinct establishments before a suit for divorce may be instituted or granted.

In one type of divorce case where the ground alleged is "Living apart without any cohabitation for five consecutive years next before application" KRS 403.020(b), it has been well settled by the decisions that a complete physical separation of living quarters be had, this court having said that the parties must live under separate roofs. See Ratliff v. Ratliff, 312 Ky. 450, 227 S.W.2d 989; Gates v. Gates, 192 Ky. 253, 232 S.W. 378; McDaniel v. McDaniel, 292 Ky. 56, 165 S.W.2d 966; and Colvin v. Colvin, 300 Ky. 781, 190 S.W.2d 473. There seems to be a sound basis for this condition precedent to a divorce on that particular ground because the "living apart" subsection is in a way unique because the question of like fault is not involved. The legislature seemed to have intended that in cases where the parties have actually broken up their home and remain apart for this long period of time the courts may sever the marital tie regardless of fault or recrimination. The gravamen of such actions is "Living apart without any cohabitation", and we must assign to that phrase the meaning which its reading spontaneously suggests. With the possible exception of abandonment, no other ground listed under KRS 403.020 requires by direct words that the couple occupy separate dwelling places. However, in the cases relied upon by the trial court—Hoffman v. Hoffman, Ky., 1899, 51 S.W. 176; and Freeman v.

Freeman, Ky., 1890, 13 S.W. 246, it was indicated that in suits involving the annulment of marriage, the parties must live apart during the pendency of the action. We will not enter into a collateral discussion of annulment suits other than to suggest that the theory of law applicable to annulment of marriage is different in many respects from the law of divorce.

■ In the absence of an express mandate of the statute requiring persons to live apart pending an action for divorce, the only possible basis for such a requirement would be that the act of living under the same roof amounted to condonation. This doctrine, which may be defined as forgiveness express or implied by one spouse for a breach of marital duty by the other, had its origin in England in the ecclesiastical courts and, while the ecclesiastical law has not been adopted in this country, we have accepted it, at least to a degree, in regard to divorce matters, 17 Am.Jur., 195, and since its acceptance, most of the law in this country has been concerned little with express forgiveness, but is devoted to condonation by the acts of the parties, and particularly by the sexual act. We have reached this point, it seems, by piling questionable inferences upon equally untrustworthy deductions. The first inference seems to be that accessibility amounts to consummation and when people live under the same roof, they cohabit. The next inference is that the sexual act constitutes a blanket forgiveness of all conjugal unkindness—that somewhere in the processes of the ritual, all is forgiven. When this theory is applied to certain grounds for divorce, such as cruel and inhuman treatment, it seems to be a strange mutation on the law. In other branches, such as contracts other than the marriage contract, we are very careful to protect parties from coercion, duress and undue influence, but here the statute demands that a spouse submit to acts of cruelty and inhumanity for a half year before divorce may be granted. Yet it has been suggested in some opinions that submission to amorous advances—when a person has been so mistreated that even his peace and happiness

have been permanently destroyed—ipso facto condones all cruelty.

We do not believe it is cynical to suggest that complete rapport is not always reached. It is not unbelievable that submission is had as a convenient avoidance of imminent trouble. Similarly in criminal cases, such as rape, the courts have taken a sympathetic attitude towards the person whose will to resist has been destroyed by force and mistreatment.

The textbook writers and the court, however, have made some distinction between various offenses; have classified them as being either continuing or non-continuing injuries, and have, rather strictly we think, applied the doctrine of condonation to all so-called non-continuing causes of divorce which, in theory, may be forgotten or forgiven. Into this category falls such marital misconduct as adultery, lewd conduct, prenuptial unchastity and similar aberrations.

In the case at bar, the offense charged—cruel and inhuman treatment—is classified as a continuing offense. However, this court did hold in Buckley v. Buckley, 214 Ky. 566, 283 S.W. 1031, that the husband's misconduct, consisting of cruel acts, was condoned by the wife when she returned to live with him after a separation. This rule apparently is not at variance with the one applied in a number of other jurisdictions. See cases annotated in 31 A.L.R.2d at page 134. It is not plain in the Buckley case whether or not the wife returned to her husband under the promise that he would no longer mistreat her, and the decision seems to be predicated entirely upon the idea that after separation a return to the same dwelling place is in itself sufficient to constitute a condonance.

Nevertheless in Meyer v. Meyer, 226 Ky. 278, 10 S.W.2d 844, this court unequivocally accepted the thesis that in cruel and inhuman treatment cases the wife's continuing with her husband during the specified time required by the statute did not amount to such forgiveness as nullified his acts. The opinion in the Buckley case was discussed and cases distinguished upon the grounds that in one case there had been no

separation while in the Buckley case there had been a separation and return. This distinction appears to be rather fine, particularly in view of the fact that the law looks with favor upon attempts to reconcile the differences between the spouses and thus to avoid divorce. At the same time, if a party returns after a separation upon a promise of better behavior, the other person should not be deprived of the right to complain of previous cumulative acts, if that promise is broken.

The difficulty we have found in detecting a consistent strain of related principles behind the many cases on this subject lies in the fact that legal reasons for divorce are diverse and it is impractical to lay down rules broad enough to cover every contingency.

 In recapitulation we have reached the following conclusions:

(1) Under the specific terms of KRS 403.040, cohabitation (sexual), after knowledge of adultery or lewd and lascivious behavior, destroys the right to divorce on that ground;

(2) In cases involving "living apart without any cohabitation," a complete physical separation of the living quarters must be had during the (5 year) statutory period, unaccompanied by sexual relations. Ratliff v. Ratliff, 312 Ky. 450, 227 S.W.2d 989; Gates v. Gates, 192 Ky. 253, 232 S.W. 378; McDaniel v. McDaniel, 292 Ky. 56, 165 S.W. 2d 966; and Colvin v. Colvin, 300 Ky. 781, 190 S.W.2d 473;

(3) An abandonment under KRS 403.020 may be had without leaving the house in which the two live if one of the parties refuses to recognize the marriage relation or to cohabit with the other. Axton v. Axton, 182 Ky. 286, 206 S.W. 480; and Evans v. Evans, 93 Ky. 510, 20 S.W. 605;

(4) In other cases involving other grounds,

(a) it will not be presumed from the mere fact that the couple live under one roof that they engage in sexual intercourse, and the true relationship of the parties, while living together, is a proper subject of inquiry which may be determined from evidence introduced;

(b) If the evidence discloses that the parties have occupied the same dwelling but have not had sexual intercourse since the act complained of, there will be no condonation by implication. Stoneburg v. Stoneburg, 120 Fla. 188, 162 So. 334; Glass v. Glass, 175 Md. 693, 2 A.2d 443; Giles v. Giles, 279 Mass. 469, 181 N.E. 505; and Cousino v. Cousino, 90 Ohio App. 449, 107 N.E.2d 213;

(5) In cases of continuing offense—such as cruel treatment and contraction of loathsome diseases—condonation will not be implied from either living together or acts of coition. Robb v. Robb, 281 Ky. 729, 137 S.W.2d 385; Meyer v. Meyer, 226 Ky. 278, 10 S.W.2d 844; Hooe v. Hooe, 122 Ky. 590, 92 S.W. 317, 5 L.R.A.,N.S., 729, and Muir v. Muir, 133 Ky. 125, 92 S.W. 314, 4 L.R.A., N.S., 909;

(6) A spouse's endurance of cruelty and indignities in hope that the other will change has as much the character of probation as of condonation, and the continuation of all marital relations will raise no presumption against the true facts;

(7) Where the parties after a separation resume cohabitation upon the promise of the offending spouse to desist from future marital derelictions, no condonation will be presumed if that promise is broken. We cannot determine from the facts stated in Buckley v. Buckley, 214 Ky. 566, 283 S.W. 1031, the exact nature of the reconciliation, but insofar as that opinion may differ from the rules laid down herein, it is overruled.

 Appellant next complains because the trial judge withdrew to his chambers and there interrogated the child while they were alone and based his judgment upon evidence then given by the child. It is for the court to determine whether a child offered as a witness has sufficient intelligence and other essentials to qualify as a witness. Thomas v. Commonwealth, 300 Ky. 480, 189 S.W.2d 686. The test is whether the young witness possesses sufficient in-

telligence to narrate truthfully the facts to which his or her attention is directed, but there is no unalterable rule measuring the competency of a witness because of age. Davenport v. Commonwealth, 285 Ky. 628, 148 S.W.2d 1054. And the question of whether the child is qualified is addressed to the sound discretion of the court. Swanigan v. Commonwealth, 240 Ky. 504, 42 S.W. 2d 726. However, after the court has determined by voir dire examination that the child is a suitable witness, then any truth given by him should be given in the presence of the parties or their counsel if it is to be made the basis of the court's decision. This procedure in a circuit court differs from that used in a juvenile court where the child's welfare is the sole subject of inquiry and where broad latitude is given under special statutes. KRS 208.010 and 208.060.

In view of the fact that the trial court has made no finding other than dismissing the case on the technical grounds that the parties are living under one roof, it is necessary to return this case for a decision upon the merits.

Judgment reversed.