## Phelps v. Phelps.

(Decided June 19, 1917.)

### Appeal from Warren Circuit Court.

1. Divorce—Alimony—Evidence.—Upon an appeal from a judgment granting the husband a divorce and denying alimony to the wife, evidence will be reviewed and judgment may be reversed upon the question of alimony although the divorce may not be disturbed.
2. Divorce—Alimony—Evidence.—An examination of the evidence in this case held not to warrant a reversal of the judgment denying alimony to the wife.

W. W. MANSFIELD and BRADBURN & BASHAM for appellant.

SIMS, RODES & SIMS and GUY H. HERDMAN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On September 21, 1915, appellee filed this action in the Warren circuit court against appellant for divorce, charging her with adultery with one Arthur Hardcastle, and that her behavior had been so lewd and lascivious as to prove her to be unchaste. Appellant filed her answer on September 27, 1915, denying the charges made against her and filed a counter-claim asking for a divorce on the ground of cruel and inhuman treatment, and that she be allowed alimony. The issues were completed by proper pleadings, proof taken and upon submission the chancellor rendered a judgment granting appellee an absolute divorce and dismissing appellant's counter-claim, from which judgment she prosecutes this appeal.

As it is well settled in this state that a judgment of divorce cannot be disturbed, the only question before us is whether or not the chancellor erred in refusing to allow appellant alimony, and to determine this question it is proper that we review the action of the chancellor in granting the divorce, for if the husband has proven his charge of infidelity against the wife, alimony

was properly refused. Kentucky Statutes, section 2122; Holman v. Holman, 155 Ky. 493, 159 S. W. 937. There is no question of law involved in the case, it simply being a question of fact.

The parties were married in Nashville, Tennessee, in January, 1906, and lived together as husband and wife until this trouble arose, in 1915, with no disturbance of any consequence and quite happily, so far as their neighbors and intimate friends could discern. Neither party had any means at the time of the marriage and at the time of the separation appellee had probably not to exceed one thousand ($1,000.00) dollars, in personal property, besides the household furniture, a part of which the wife had assisted in purchasing with money she had earned by sewing. She had been a dutiful, kind and industrious wife and he had fulfilled his obligations as a husband. During all of their married life they lived in Bowling Green, at or near 154 Kentucky street. He was engaged in the grocery business, with his brother, most all this time and while so engaged met Arthur Hardcastle as a traveling salesman for Davidson Brothers, a wholesale grocery firm, and introduced him to his wife. In June, 1915, appellee having gone out of the grocery business, accepted employment from Davidson Brothers as a traveling salesman, and his duties took him away from home from Monday until Friday or Saturday of each week. On September 19, 1915, Edgar Clemens, a friend of appellee and relative of appellant, who had, at one time, lived in the same house with them for about two years, informed appellee that he had seen his wife, upon several occasions during the months of August and September, get into an automobile after dark and under circumstances which excited his suspicions, with Hardcastle on Center and State streets, in Bowling Green, and drive off with him, returning in a half or three-quarters of an hour later and get out of the automobile near the same place where she had entered it. On the next day, appellee, in company with Clemens, went to appellant and accused her of misconduct with Hardcastle, telling her what he had heard. She, at first, denied having taken automobile rides with Hardcastle, and then admitted two of the automobile rides, confessed that she had done wrong and asked her husband's forgiveness, but he refused to forgive her and on the next day, September 21, filed this suit for a divorce upon the grounds above stated. Clemens, testifying for the husband, stated that on August 17th and 25th and September 1st and 8th, he had seen

appellant get into an automobile with Hardcastle, after dark, at a point where the street was not well lighted and that upon each occasion she rushed into the automobile as if attempting to avoid being observed; that upon each occasion, when she returned, she got out of the automobile near the place she had gotten into it, which was some little distance from her home. She, and Hardcastle testifying for her, admitted the rides upon the nights of August 17th and 25th, but denied the rides upon the other occasions; that they did take the rides on September 1st and 8th also Clemens is corroborated by the testimony of Leland Bunch, M. T. Phelps and Dr. C. C. Threlkel. In addition, Edward Proctor testified that during either August or September, he saw Mrs. Phelps pass Hardcastle in front of Ewing's drug store, and heard Mrs. Phelps say to Hardcastle, as she passed him, and without stopping, "I will be out tonight." Neither Hardcastle nor Mrs. Phelps contradict this testimony. Mr. Phelps testifies that upon several occasions, before these automobile rides, he had warned his wife that Hardcastle's reputation was not good and that she ought not to engage in conversations or associate with him. This Mrs. Phelps denies.

The charge that she made against her husband of cruel and inhuman treatment, after he had charged her with infidelity, is supported by no evidence whatever, except her own testimony, and is overwhelmingly contradicted by the other evidence in the case. Mr. Clemens and appellee testify that Hardcastle's reputation for morality is bad, and no witness testifies that it is otherwise.

To summarize, it is proven that Mrs. Phelps, during the absence of her husband, began meeting, clandestinely and surreptitiously, a man whose reputation for morality was not good, for the purpose of taking automobile rides with him after night, and that her husband learned of the fact and confronted her with it, she first denied the charge *in toto,* and then admitted conduct at least indefensibly indiscreet, and asked the husband not to make public the charge. The chancellor lives in the town where these people live, and, no doubt, knew all the witnesses personally who testified in the case. In addition to the misconduct to which Mrs. Phelps confessed, the chancellor, upon the evidence, would have been entirely justifiable in accepting as true the testimony of other automobile rides with Hardcastle which she denied.

The question before us is: Did this testimony sustain a charge of either adultery or much lewd and lascivious conduct as to prove the wife unchaste. The charge is necessarily difficult of positive proof, because the parties naturally have taken every precaution to avoid the possibility of proof, but like every other fact it is provable by indirect or circumstantial evidence as well as by direct evidence. As said in 14 Cyc. 684: "Indirect or circumstantial evidence is admissible to prove adultery. The facts and circumstances to be admissible in evidence must be relevant and material and such as may produce reasonable inference that the offense has been committed. An adulterous disposition and an opportunity to commit the offense are, in combination, important factors in proving adultery by circumstantial evidence. These facts may be proven by either direct or circumstantial evidence and any circumstance is therefore admissible that tends to show a disposition on the part of the accused to commit adultery and an opportunity created by the parties themselves or otherwise for the commission of the offense." It is indubitably true that the same way and by the same kind of evidence lewd and lascivious conduct could be established, and it is also true that inferences reasonably deducible from Mrs. Phelps' conduct proven here depend not so much upon the mere fact that she took automobile rides with Hardcastle, as upon the manner and circumstances under which she took the rides. That they were taken after dark during the absence of her husband from home and in a manner indicating that she did not want the fact known, as is indicated by her getting in and out of the automobile some little distance from her home upon a street not so well lighted or so frequented as the one upon which she just a short time theretofore had passed Hardcastle and that she did not inform her husband of these rides until confronted by him with proof, and then only reluctantly, is certainly proof that the rides were not entirely proper and so recognized by her at the time; and if, as testified by the husband, this was done after his warning to his wife that Hardcastle was not a proper person for her even to be seen in conversation with, it would seem almost impossible to escape the inference evidently drawn by the chancellor, and the chancellor knowing the parties was much better qualified than are we to decide whether the husband or the wife had testified truly about this warning, as well as to weigh other circumstances in proof with reference to the charge made. The whole question turns upon the

inference to be drawn from the circumstances proven and that inference manifestly would depend largely upon the character and reputation of the parties involved and we do not feel that we are warranted in disregarding the chancellor's finding on the question of fact under the circumstances proven. In the case of Robards v. Robards, 33 Ky. L. R. 565, 110 S. W. 422, upon proof of misconduct upon the part of the wife, more reprehensible it is true than the misconduct proven here, but analogous in so far as the conduct was improper and susceptible of inferences of immorality, this court refused to disturb the judgment upon the question of alimony and giving the same weight to the judgment of the chancellor here, we do not feel justified, upon the evidence, in disturbing his finding upon this question of fact.

Wherefore, the judgment is affirmed.