## Bush v. Bush

(Decided Oct. 4, 1932.)

MARCUS C. REDWINE, J. SMITH HAYS and ALLEN PREWITT for appellant.

RODNEY HAGGARD for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming in part and reversing in part.

Louise Bush instituted this action against Edgar Bush for divorce on the grounds of cruel and inhuman treatment, and, in addition to her prayer for divorce, asked for the custody of their three children, Carl, Robert and Anna, aged four years, two years and eight months, respectively, and for alimony.

By answer and counterclaim, appellant, defendant below, traversed the allegations of the petition, and also asked for divorce, charging that Mrs. Bush had been guilty of such acts of immorality and lewd and lascivious conduct as proved her to be unchaste; that within six months before their separation she had committed adultery; that prior to their separation plaintiff

had become pregnant by another man, and that the infant named Anna was not the child of appellant, but was begotten by another man.

By agreement of parties, the cause was heard in open court on oral testimony, and resulted in a judgment granting to Mr. Bush an absolute divorce and the custody and control of the three children, subject to the right of appellant to have them with him once a month from Friday afternoon until Sunday afternoon. It was further adjudged that appellant should pay appellee the sum of $20 each week for the support and maintenance of herself and children. This appeal is from that part of the judgment awarding Mrs. Bush maintenance and custody of the older children.

While, under our statute, this court may not reverse a judgment granting a divorce, we may review the evidence heard by the chancellor in determining the correctness of his judgment with respect to the custody of children and the awarding of alimony or maintenance.

Some question is made that the court erred in not adjudging the restoration to appellant of certain household effects which belonged to him individually; but there is nothing in the judgment respecting property rights as between parties, and, furthermore, it appears by the record that appellant's affidavit setting forth that he owned certain personal property in possession of appellee and which he asked should be restored to him was not filed until after the judgment had been entered. Appellant may yet have this matter finally determined by the court, and, until this is done, it is not a question of which this court may take cognizance.

Much of the briefs of respective parties is given to questions of competency of witnesses and of certain evidence. In view of the conclusions reached by the court, it is unnecessary to encumber the opinion with a discussion of these questions, since the result would be the same, regardless of how they might be determined.

Practically all the evidence in support of the grounds for divorce alleged in the original petition is that of appellee, and, without going into detail, it is apparent that that, standing alone, would not justify the granting of a divorce. But by amended petition appellee charged that appellant had publicly and in the

presence of others falsely and maliciously charged her with acts of infidelity, immorality, and indecency, so we are left to determine whether the charges made by appellant against appellee in his pleadings and otherwise were so unfounded as, coupled with other facts shown by the proof, would warrant the lower court's judgment.

Evidence introduced as tending to show improper conduct on part of appellee is, in substance, to the effect that three or four men were seen to go into the home of these parties at times when the husband would be away, and it appears that some of these made repeated visits. One of these men was a representative of the Jewel Tea Company who called at other homes in the same community. Another of these visitors was a representative of a local furniture company, and a third, an automobile salesman. Practically all of these visits, testified to by neighboring women, were made in the daytime.

One witness saw appellee riding in an automobile with another woman and two men on a road leading out of Winchester in the daytime, but did not recognize the other occupants of the automobile. Another witness testified to having seen her with others sitting in an automobile parked on a street in Winchester. There is evidence that on another occasion she was seen getting into an automobile parked on the street where she remained for about five minutes. This was in the daytime, and no other person was in the car. The witness testified that this automobile belonged to one of the men who it is claimed paid her undue attention. There is also some evidence that on different occasions she was seen in conversation with men on the street, and one witness testified that he saw her at the railroad station in conversation with one of the men with whom her name has been connected; that, when the witness appeared, she turned and went back through the waiting room and the man walked away.

Appellant introduced in evidence a number of letters purporting to have been written by or to appellee. The contents of some of these letters might indicate that she had been guilty of indiscretion, but appellant admitted that, after he claims to have received an anonymous letter signed "A Friend" warning him that his wife was "cheating," he wrote her a note to which

he affixed the initials of another man seeking to arrange a meeting with her. Appellant testified that his wife confessed to him her infidelity, but this, according to his evidence, occurred several months before their separation. While the foregoing is not all the evidence introduced by appellant to sustain his charges against appellee, it is, in the main, the basis for such charges.

Mrs. Bush denied that she had been guilty of any of the acts charged by her husband or that she had admitted or confessed acts of infidelity to him. She also denied that she had written or received any of the letters introduced in evidence or that she received male callers in the absence of her husband, but admitted that men had come to her home on business errands when her husband was absent.

In the light of this record, the evidence of appellee is, to say the least, entitled to as much credit as that of appellant, and, viewing this record, wholly apart from their evidence, it is at once apparent that there is nothing on which to base reasonable inferences or conclusions that appellee was guilty of the charges made against her.

On September 3, 1930, more than a month before appellant filed his answer and cross-petition containing these charges against his wife and when he had full knowledge of all her alleged acts and misconduct on which he based his charges, he entered into a stipulation with her, by and through his attorney, in which it was agreed that he would pay her the sum of $15 per week "for the maintenance of herself and their children." It was further agreed that she have the control of the children, with right reserved to him to see them at all reasonable times, and to take the two older children on a day or two visit to his mother's once or twice a month. While this agreement is not conclusive that appellant's charges were unfounded and an afterthought on his part, it is, at least, out of harmony with his charges that his wife is a base and adulterous woman. Appellant's admission that he wrote a letter to his wife in the name of another seeking to entrap her, and the fact that other letters introduced in evidence found their way into the possession of members of his immediate family, may have led the chancellor to doubt the authenticity of these letters, and, in the light of these facts and the attending circumstances

shown by the proof, it cannot be said that such doubt was without foundation.

It has been held by this court that a charge of adultery and lewd and lascivious conduct may be established by indirect and circumstantial evidence, provided that evidence is relevant and material, and of such nature as may produce a reasonable inference that the acts charged have been committed, Phelps v. Phelps, 176 Ky. 456, 195 S. W. 779, but such a charge cannot be sustained by inferences drawn from mere suspicion or by building inference upon inference. The supporting proof of the grounds alleged must be positive, clear, and explicit. Phelps v. Phelps, 232 Ky. 683, 24 S. W. (2d) 584; Honaker v. Honaker, 218 Ky. 212, 291 S. W. 42. Aside from the evidence of appellant that his wife confessed acts of infidelity, there is absolutely no proof that any man ever took undue liberty with her or that she was even seen in a compromising position with men; neither is there proof of acts or conversation of appellee with other men in anywise indicating that she was of a lewd or adulterous nature. It has often been written by this court that deliberate and unfounded charges of the nature made in the cross-petition, unless made in good faith and upon reasonable grounds, afford the wife grounds for divorce. Austin v. Austin, 243 Ky. 848, 50 S. W. (2d) 9; Morgan v. Morgan, 231 Ky. 421, 21 S. W. (2d) 653; Wesley v. Wesley, 181 Ky. 135, 204 S. W. 165; Shrout v. Shrout, 12 Ky. Law Rep. 470.

In the case of Rogers v. Rogers, 17 S. W. 573, 13 Ky. Law Rep. 526, it was held that, where a wife sues for divorce on grounds of cruel and inhuman treatment, and the husband by cross-petition makes unfounded charges as to the wife's chastity, and introduces proof in attempting to bastardize the issue, a divorce should be granted on the wife's petition, even though other proof of cruel and inhuman treatment be insufficient.

While counsel for appellant correctly point out that, in equity cases, the opinion of the chancellor is not regarded by this court in the same light as a verdict of a jury, but that this court will for itself consider and determine the weight to be given the evidence, they in argument on an entirely different question aptly use these words, "The court saw with his own eyes, and heard with his own ears, every word of testimony

that was introduced. The court had opportunity to observe the demeanor of the witnesses, their conduct, their attitudes, and their testimony, and of course had opportunity to weigh its effect and credibility."

Adopting this language of counsel, we might add that the chancellor was in much better position to judge as to the credibility of the witnesses testifying in open court than is this court from a reading of the record, and our conclusion is that his finding that appellee was entitled to a divorce on the ground of cruel and inhuman treatment is fully warranted by the evidence. It follows that he did not err in awarding appellee maintenance for herself and children. In the absence of proof that appellee is not a fit person to have the custody of the children, it was properly adjudged that she have their custody. As to the amount that should be awarded appellee for the maintenance of herself and children, the evidence shows that she is an able-bodied woman, living with her father and mother on their farm. Appellant is a printer, and his salary is approximately $33 per week. In addition to the costs of this action, including a fee of $125 to attorney for appellee, which he is adjudged to pay, he is otherwise considerably indebted. In view of all the circumstances, it appears to us that the weekly payments required to be made by appellant for the maintenance of appellee and the children should, for the present, be reduced to $16.50. This, of course, may be increased or reduced by the chancellor in the future as the circumstances warrant, and upon return of this case, the judgment will be so modified, but in all other respects it is affirmed.