## Hartkemeier v. Hartkemeier.

(Decided Feb. 7, 1933.)

804

HUBBARD SCHWARTZ, for appellant.

BENTON, BENTON, SMITH & LUEDEKE, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in part and Reversing in part.

Lalia Hartkemeier was granted a divorce from her husband, John F. Hartkemeier, and awarded alimony and the custody of their infant child. She was also allowed $50 a month for the maintenance of the child, and her husband was directed to pay her attorneys' fees. He appeals.

While we have no power to reverse the decree of divorce, we may review the evidence for the purpose of determining whether the judgment in other respects was proper. Kentucky Statutes, sec. 950-1; Shehan v. Shehan, 152 Ky. 191, 153 S. W. 243.

It is first insisted that appellee should not have been allowed alimony, and that, even if entitled to anything, the allowance is too large. It would serve no good purpose to set out the charges and counter charges made by the parties, and review at length the evidence on these questions. We have carefully considered all the evidence. There is nothing in the record that reflects on appellant's personal conduct. On the contrary, he is shown to be a man of fine intelligence, high character, and good habits. However, one cannot read the evidence of the other witnesses, or even the testimony of appellant himself, without being persuaded that appellant is high-tempered, dogmatic, and domineering, and that in his relations with appellee it was always his way or none. At times when his wife's health was such as to require the utmost consideration and sympathy, he not only failed to meet the occasion as he should, but indulged in such repeated outbursts of temper as to arouse the neighbors and call for the interposition of others. Indeed, it cannot be doubted that the evidence was sufficient to show that appellant habitually behaved toward his wife for not less than six months in such cruel and inhuman manner as to indicate an aversion to her, and destroy permanently her

peace and happiness, and therefore, to entitle her to a divorce. Kentucky Statutes, sec. 2117; McClintock v. McClintock, 147 Ky. 409, 144 S. W. 68, 39 L. R. A. (N. S.) 1127. Not only so, but while this action was pending appellant wrote his wife the following letter:

"Hotel Gibson,

"C. C. Schiffeler, Managing Director.

"Cincinnati, O.

"January 9, 1931.

"Dear Lalia:

"Inasmuch as you are still insistant on having what I term double alimony, I will immediately file another suit against you in Cin'ti (when I am served with the rule which the court in Ky. is attempting to serve on me) to have a trustee appointed to collect the rents and hold same pending the settlement of my previous action and asking the court to permit the adjusting of the rent on the 2nd floor flat to $60.00 a month.

"In addition I will also file a cross-petition to your action of divorce in Ky. on the charge of infidelity and whatever charge necessary when I tell my attorney the real reason what I hold against you. I have told no one to date not even my attorney what I hold against you, but the one charge is serious, which I can prove with witnesses. I have hinted all around what I hold against you in our various conversations, but you have not even fallen to what I have tried to tell you in a roundabout way. I came near blurting it out at our conference with Mrs. Geist, but I held it back to protect you against your friends, and I think I have acted a man about it when the news reaches your ears.

"Now if you want me to tell you the real facts in plain words, I will do so, if you agree to meet me in person at 1:00 p. m. today at Fifth and Walnut, and I will take you to any place you suggest for this conference.

"I will not talk to you in front of your attorney nor my attorney about what I have said above until I have given you this chance. This I am willing to do for your future welfare and happiness

and principally for Bob's future protection. I will call you over phone at 11:30 a. m. today to know if you will meet me.

"If you refuse to meet me in person the only other course for me to follow is to tell my attorney what I have against you and to take the necessary action against you through a cross petition as stated above and let the whole matter become a public court record.

"Fred Jr."

Appellee claims that the letter was written for the purpose of inducing his wife to return. It is not susceptible of that construction. Plainly it was written because he claimed that she was insisting on double alimony, and wanted to discuss that phase of the case with her. Because of the double claim he told her that he would file a cross-petition in the Kentucky action for divorce on the charge of infidelity, and added that the charge was serious, which he could prove with witnesses. He closed his letter by saying in substance that if she refused to meet him in person, the only course for him to follow was to tell his attorney what he had against her, take the necessary action by cross petition, and let the whole matter become a public court record. It is the settled rule that a deliberate and unfounded charge of unchastity, or lewd and lascivious conduct, unless made in good faith, and on reasonable grounds, is of itself such cruel and inhuman treatment as entitles the wife to a divorce. Bush v. Bush, 245 Ky. 172, 53 S. W. (2d) 352, Morgan v. Morgan, 231 Ky. 420, 21 S. W. (2d) 653. Usually the question has arisen where the charge was made in the pleadings filed by the husband, but it is the baseless character of the charge that is controlling, and not the time, place, or manner of its making. In Johnson v. Johnson, 183 Ky. 421, 209 S. W. 385, the false charge was not pleaded, but appeared only in the evidence. In McNamara v. McNamara, 93 Neb. 190, 139 N. W. 1045, the husband wrote a long letter ostensibly to his lawyer accusing his wife of adultery, and reciting the proof by which the charge could be sustained, and threatening to plead the facts as a defense if the action for divorce was persisted in. The letter, though apparently written to the husband's attorney, was inclosed in an envelope addressed to his wife, and was received by her.

The unfounded charge so made was held to be cruelty. In this case the situation is practically the same, with the exception that the letter was written directly to the wife. It is suggested that the letter was intended for her alone, and appellant is not responsible because she gave it publicity. The case is not analogous to a charge of libel. Publication was not necessary. Whether the unfounded charge was cruel and inhuman treatment is to be determined by its effect on the wife, and not by the notoriety of the charge. Not only does the letter make a threat, but it makes the charge of infidelity, and the word "infidelity," construed in connection with the language "but the one charge is serious, which I can prove with witnesses," can have no other meaning than unchastity. The evidence discloses that the charge was not made in good faith and upon reasonable grounds. On the contrary, it was wholly unfounded, and was deliberately made, without any reason whatever to believe in its truth. In the circumstances the charge was cruel and inhuman treatment entitling appellee to a divorce. It follows that appellee was entitled to alimony.

The record discloses that appellee owned a piece of real estate on which she had made certain payments, but that by far the greater portion of the purchase price was paid by appellant. Considering his interest in his wife's property, and making due allowance for depreciation, his estate at the time of the hearing amounted to about $29,000. After ordering each party to restore to the other such property not disposed of at the commencement of the action as either may have obtained directly or indirectly from or through the other during the marriage, and in consideration or by reason thereof, the court awarded appellee as alimony certain furniture, $1,300 in cash, and her husband's interest in the real estate owned by the wife. The amount so allowed was less than one-third of appellant's estate, and it cannot be said that the allowance was excessive. On the contrary, we conclude that the chancellor made a fair and reasonable adjustment of the property rights of the parties.

Appellee is shown to be a woman of high character, and a thoughtful, considerate, and attentive mother. Considering the welfare and best interests of the child, who is only five years of age, it is at once apparent

that the court did not err in awarding his custody to his mother. However, in view of what appellant has left, and the difficulty of securing employment at this time, and of the present needs of the child, we are constrained to the view that the maintenance allowance of $50 a month is too high, and that the allowance should be fixed for the present at $25 a month.

Under the statute the husband must pay the cost of each party, including the wife's attorneys' fees, unless it is made to appear that the wife is in fault, and has ample estate to pay same. Kentucky Statutes, sec. 900. It is true that appellee had some estate, but it not appearing that she is at fault, appellant must pay all costs, including attorneys' fees. Ratliff v. Ratliff, 193 Ky. 708, 237 S. W. 397.

On the cross-appeal it is insisted that the allowance to appellant's attorneys is too small, and should have been fixed at $1,200. It is true that counsel for appellee were required to perform a great deal of work, but, considering the case not only in the light of the services performed, but in the light of the results, and appellant's ability to pay, we see no reason to increase the fee allowed by the chancellor.

On the original appeal so much of the judgment as allows $50 a month for maintenance of the child is reversed, and cause remanded, with directions to fix the allowance at $25 a month. In other respects the judgment is affirmed. On the cross-appeal the judgment is affirmed.