## Dayton v. Dayton

April 24, 1942.

B. S. Grannis for appellant.

John P. McCartney and Will Conley for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

In the preparation of this opinion there will be cited only a small number of domestic cases as examples of many others sustaining the propositions advanced, the cited ones referring to others of like tenor. This case is a divorce action filed by appellant, the wife and plaintiff below, against the appellee, husband and defendant below. They were married on October 9, 1918, and at the time of the filing of the action in the Fleming Circuit Court on March 26, 1941, and at the time of the rendition of the judgment, they had four children, three boys and one girl. The oldest boy was 21 years of age, the next oldest 19 years of age, and the youngest 8 years of age, the girl being 17 years of age. Plaintiff at the time of the marriage was a young widow 25 years of age and she had one son by her first marriage, but he was not a member of the family at the time of the filing of the action. Defendant at the time of the marriage was some two or

three years older than plaintiff and they immediately took up their abode in Nicholas County across the line from the adjoining one of Fleming. Plaintiff possessed at the time of the marriage household goods sufficient to supply a home and $2,100 in cash collected from an insurance company carrying a life policy on her deceased first husband. She carried all of her household goods to their first acquired home and supplied it with those articles. She likewise turned over to her husband, the defendant, $1,030 from her insurance money, and the parties started out on life's journey as cultivators of the soil. Children began to appear until the daughter, now 17 years of age, was born, but there was an interim of nine years between her birth and that of the youngest 8-year old boy.

The grounds of divorce alleged in the petition are, cruel and inhuman treatment of plaintiff by defendant, and his settled aversion to her so as to permanently destroy her peace and happiness and which existed more than six months prior to the filing of the petition. Those grounds were denied by defendant's answer, and he counterclaimed in reliance upon the same grounds leveled against defendant, which were in turn denied by a reply and proof was taken. Upon submission the court granted plaintiff a divorce, thereby sustaining her grounds and rejecting defendant's counterclaim. Plaintiff prayed in her petition for the custody of the daughter and the youngest male child, but the court in its judgment denied her that relief and adjudged her a lump sum of $800 alimony. Complaining of the inadequacy of alimony, and disallowing her the possession of her two children, the right to the custody of whom she asserted— and especially as to the young boy—she prosecutes this appeal; but no cross-appeal has been prosecuted by the husband.

As is usually true in such cases the proof on the relied-on grounds for the divorce is more or less contradictory. Our appraisement of it, however, coincides with the judgment of the Chancellor to the effect that the husband was to blame for the tragic and unfortunate conditions produced, resulting in the breaking up of a home to the detriment of the fruits of the marriage as well as to the parties themselves. The proof shows that the wife may have possessed some temper, and—being human— she, no doubt, also possessed some resentment and re-

taliation. The husband was more or less cold and appears to have lacked an appreciation of domestic duties and a proper conception of his obligations to the plaintiff as his life partner. She is shown, without contradiction, to have loyally and industrially devoted herself to the running of the household and in caring for her children, and, no doubt, she entertained the same sentiment toward her husband, the defendant, so far as his attitude towards her would permit. There is proof that the plaintiff on occasions abused defendant in more or less rough language but which she denied. However, if true such occasions were shown to be those when her husband would be venting on her one of his more or less rampages, and exhibiting the constant growing coldness which eventually resulted in plaintiff leaving the household and taking up her abode in Fleming County with some of her relatives. About four years before the filing of this instant action she proceeded in a similar manner to have the bonds of matrimony dissolved upon the same grounds relied on in this one, but that case never went to trial, since she was persuaded by her husband to return home and resume her station therein, followed by a dismissal of that action. However, plaintiff's proof showed that instead of her husband's attitude and conduct towards her improving thereafter, matters grew worse, but which plaintiff endured until the final separation; followed by her filing the instant action.

It will serve no useful purpose to recite in detail the testimony of the various witnesses on the determinative factual issues, except to say that there was most convincing testimony that defendant frequently employed most abusive language to plaintiff, calling her the vilest of names, profanely expressed. Not only so, but on occasions he would assault her person by striking her, and at least on one occasion the proof shows that he bruised her body and loosened one of her front teeth. If, therefore, defendant's testimony as to retaliatory conduct on the part of the wife were true, it could easily be attributed to that quality of human nature limiting human endurance—known as resentment and somewhat akin to self-defense. We therefore conclude that the trial court's judgment as to who was to blame and who was the primary cause of the separation is abundantly sustained by the proof adduced at the trial.

At the time of the separation—and quite a while

prior thereto—defendant purchased the home now occupied by him containing 132 acres, for which he paid $60 per acre, and which at the time of the separation had all been paid except $1,500. The farm appears to have been well stocked, and after its purchase defendant made considerable improvements thereon in the way of cleaning up the place, repairing and constructing fences and building a tobacco barn, itself costing $500. The dwelling on the farm that was on it when defendant purchased it burned some years ago, and with the insurance carried thereon, plus any deficiency that might have existed, a new and more modern two-story residence was constructed containing eight rooms; and though defendant insists and tries to prove to the contrary, we think the testimony abundantly shows that the farm is now worth more than, or in any event as much as, it originally cost. In addition to the farm defendant owned and possessed considerable farming utensils a great portion of which he did not possess at the time of the marriage, and to the acquiring of which—including the farm itself—plaintiff most valiantly contributed, since she is shown to have done all the cooking for the family, washing, ironing, sewing for its members, and even repairing the dwelling by repapering it when needed. She was also most economical with her personal expenses, generally contenting herself with clothing costing comparatively a nominal sum.

In addition to the listed property as owned and possessed by defendant he is shown to be about 48 years of age, stout and in sound, vigorous health. He also earns, independently of his farming interests, a more or less snug sum under a contract he has with some sort of medicine or toilet manufacturing company whereby he sells its product to citizens in the prescribed territory of his agency. The daughter, who appears to have continued to reside with her father after the separation, no doubt renders services in assisting and running the household equal to, if not greater than, her expenses; and the two older boys are old enough to—and at least the oldest one does—shuffle for himself; so that it truthfully may be said that the only maintenance expenses borne by defendant is that which may be necessary to expend for the benefit of the youngest son whose custody was given to him. The health of plaintiff according to the testimony is, at present at least, practically destroyed, and she possesses no source of income whatever,

although as we have said she contributed her full share in the accumulation of all the property now owned by defendant, which we conclude from the proof is a net sum of at least $7,500. He contended in his testimony that in addition to the $1,500 balance of purchase money for the farm he was obligated to pay $1,000 growing out of his purchase and resale of a poolroom, but the proof shows that he has a lien on all of the poolroom fixtures and furniture, the value of which is equal to or greater than the amount of the lien; so that this alleged indebtedness disappears from the picture.

In our opinion in the recent case of Lewis v. Lewis, 289 Ky. 615, 159 S. W. (2d) 995, 996, there is contained an epitome of the rules governing this court in measuring alimony, including lump sums, as heretofore declared in former opinions. We can not improve upon it and therefore insert it in full and which is: "The court having properly granted the wife a divorce, we look to Section 2122, Kentucky Statutes, for the conditions upon which an allowance of alimony shall be made and for its proper measurement. The condition is that the wife does not have sufficient estate of her own to maintain herself. It is not denied that in this case the wife has no estate and is not equipped in a profession or business that enables her to make her own living. Her mother, a widow, is employed on a meager salary in Albany. The Statutory measurement of maintenance or alimony is such 'as shall be deemed equitable.' This has never been literally confined to the consideration of the value of the husband's present estate. The duty and moral obligation of a husband to maintain his wife continues after the marriage relation is severed by the law if he was the cause of the severance. So it is deemed equitable to regard not only the present value of his property and its productiveness but also his earning capacity, which involves the elements of age, health and ability to work; likewise in some cases his expectancy of an additional estate. And equity cannot ignore the degree or fault for the situation or what the social standing, comfort, and even luxuries of life the wife would have had but for the enforced separation. Shehan v. Shehan, 152 Ky. 191, 153 S. W. 243; Kelly v. Kelly, 183 Ky. 172, 209 S. W. 335, 338; Williamson v. Williamson, 243 Ky. 544, 49 S. W. (2d) 337; Sabel v. Sabel, 286 Ky. 575, 151 S. W. (2d) 56."

Other cases to the same effect are cited in the opin-

ion referred to including that of Burns v. Burns, 173 Ky. 105, 190 S. W. 683, 686. In the latter case in discussing the same question as to lump sum allowances for alimony we said: "In many instances, and under facts less appealing, this court has allowed to the wife as much, and sometimes more than one-third of, the husband's estate. McClintock v. McClintock, 147 Ky. 409, 144 S. W. 68, 39 L. R. A., N. S., 1127; Duvall v. Duvall, 147 Ky. [426], 427, 144 S. W. 78; Shehan v. Shehan, 152 Ky. 191, 153 S. W. 243; Day v. Day, 168 Ky. 68, 181 S. W. 937; Pemberton v. Pemberton, 169 Ky. 476, 184 S. W. 378, and authorities therein cited."

We conclude that the testimony in this case develops conditions and a situation entitling plaintiff to the most liberal allowance approvable under our adopted rules for its measurement, and which would be in this case at least $2,500 all told. That conclusion is formed independently of any consideration given to the amount of property originally contributed by plaintiff in the establishment of the home and equipping it for living purposes, although her petition in this case does not seek a restoration of that property to her as having been acquired by the husband through the marriage to which she perhaps might have been entitled. Therefore it is our conclusion that the court erred in the amount of alimony allowed to plaintiff. On the contrary it should have been as much as $2,500. However she was allowed an attorney's fee of $150, which the husband was ordered to pay, which deducted from our estimate of the proper amount as alimony for plaintiff leaves the sum of $2,350 which we conclude should be the amount of the judgment in her favor.

In brief of plaintiff's counsel there is but slight urging of the relied on error of the court in adjudging the custody of the infant child to defendant. As said, plaintiff is now in a broken down state of health suffering from extreme nervousness. She is penniless so far as this world's goods are concerned, dependent for a home upon the charitable disposition of relatives. Defendant is financially able to provide necessary expenses for the maintenance of the infant child of the parties. The judgment prescribed for reasonable visits of the infant with its mother and reserved the right to alter it, as it relates to the child's custody at any time when changed conditions require it. We have therefore concluded

under the circumstances to not disturb the judgment in that respect, on the assumption, of course, that the trial court under the reservation will hereafter correct the judgment so as to comport with any situation which the future might develop.

Wherefore the judgment is reversed on the issue of alimony allowance, but affirmed on the question of custody of the child, with directions to set aside the alimony judgment and to render one in conformity with this opinion.