# Goodwin v. Goodwin

Feb. 15, 1944.

Norman W. Bowman and Roy Wilhoit for appellant.

Edwin V. Holder for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Reversing.

The parties to the action were married in the year 1920, when appellant was fifteen (15) years of age; appellee is nineteen (19) years her senior. Six (6) children were born to the union, three (3) of whom are under twelve (12) years of age. The suit was instituted by appellant, who prayed for a divorce, alimony, and maintenance for the three youngest children. Appellee defended the action, but did not testify in his own behalf or offer any other evidence. Appellant propounded certain questions to him concerning the value of his estate, by interrogatories. His answers concerning the value of his real estate, and concerning his gross income, manifest a deliberate intention on his part to evade the questions, or a woeful lack of knowledge of his earning capacity, and of the value of the property it is admitted he has purchased since his marriage. In answer to the following questions, he made the following answers.

"Q. What is the value of each separate tract or parcel of real estate you now own, and what was the value of same at the commencement of this action? A. I don't know.

"Q. What was the amount of your gross income for the year 1941? A. I don't know.

"Q. The amount of your gross income for 1942, up to August 31st, 1942? A. I don't know.

He admitted that he owned a farm of nine hundred fifty acres located in Lewis County, Kentucky; that he owned farm implements of the value of Seventy-Five Dollars ($75); the stock of merchandise in his store he estimated at Fifteen Hundred Dollars ($1,500); lumber valued at Sixty Dollars ($60); nineteen (19) head of cattle, twenty-five (25) chickens, two (2) horses, and two (2) mules; and placed the value of his personal property at Thirty-Five Hundred Dollars ($3,500). He testified that his net income was only One Thousand Dollars ($1,000) per year, derived mostly from live stock. In answer to a question concerning the breakdown of his income, he answered that his income from live stock constituted sixty per cent (60%) of the whole; that from his store thirty per cent (30%); and that from the Post Office, of which he is the Master, ten per cent (10%). His daughter testified, and he did not deny, that his income from the Post Office amounted to Four Hundred Dollars ($400) per year. If his estimate concerning the percentage of his income from the Post Office is correct, he would have an income of approximately Four Thousand Dollars ($4,000) per year. In addition to the farm, he owns a store building worth Three Thousand Dollars ($3,000), and his home, which his wife testified cost between Eleven and Twelve Thousand Dollars, and which he did not deny. He owns another piece of real estate, the value of which does not appear in the record. In the year 1938 he withdrew Seventeen Thousand Dollars ($17,000) from his account in a bank, the disposition of which is not explained in the record. The grounds for divorce were cruel and inhuman treatment and a confirmed habit of drunkenness, attended by a wasting of his estate. Cruel and inhuman treatment and habitual drunkenness were proved abundantly; however, the evidence is meager as to, and we think the whole record shows that he has not been guilty of, wasting his estate. For several years before suit for divorce was instituted, appellee was addicted to the excessive use of alcohol, and was extremely abusive to appellant. He refused to permit his daughters to attend school beyond the Eighth Grade, because he was of the opinion that High School was not a proper place for girls to be. He finally told his wife that it was up to her and the children to make their

own living, and that he did not intend for them to have a penny of what he had. The uncontradicted proof for the appellant shows her to have been a dutiful, hard working wife and mother; that she has lived frugually, and sacrificed the best years of her life in raising her family and helping her husband accumulate and save whatever he now owns. The evidence is clear that she is without any fault in respect to their matrimonial difficulties; she has been a virtual slave to her husband and children. The evidence shows that she raised a garden, worked in the fields, "slopped hogs," chopped wood, picked berries, washed, ironed, and cooked for the family. In the year 1942 she canned approximately three hundred gallons of fruits and vegetables. The Chancellor granted her a judgment of divorce; the custody of three children above mentioned; awarded her alimony in a lump sum of One Thousand Dollars ($1,000); and maintenance for the three children in the amount of Thirty Dollars ($30) per month.

In making the award of alimony and maintenance, the Chancellor in his opinion stated:

"It is very hard for the court to fix a proper amount of alimony with the proof in the condition that it is."

If the proof as to the value of appellee's property is uncertain, it is because appellee refused to introduce evidence which would make it more definite. Appellant introduced the best character of evidence she could. Appellee admitted that he was the owner of all of the property appellant stated he owned, and he did not contradict the valuation she placed upon the property in her testimony. That being true, we must, for the purpose of determining alimony and maintenance, accept the estimates made by her and the admissions made by him to be correct. No one has estimated the value of the nine hundred fifty acre farm, which is located in Lewis County, and we do not know whether it is farm land, timber land, hillside, or bottom. Assuming it to be worth Ten Dollars ($10) per acre, the farm would be worth in the neighborhood of Ten Thousand Dollars ($10,000); the home Eleven Thousand Dollars ($11,000); personal property Thirty-Five Hundred Dollars ($3,500); the store building Three Thousand Dollars ($3,500); making a total of Twenty-Seven Thousand Five Hundred Dollars ($27,500). Assuming the nine hundred fifty acre farm to be worthless, the evidence shows his

estate to be worth Seventeen Thousand Five Hundred Dollars ($17,500). The above calculation does not take into consideration the Seventeen Thousand Dollars withdrawn from the bank in the year 1938. The evidence further shows that appellant has no estate of her own, nor is she trained in a profession or business that enables her to make her own living. Since he accumulated all but Five Hundred Dollars worth of this property since he was married, and he and his wife and six children have lived, although frugally, out of his earnings for that period of time, it is apparent that his average yearly income has been far in excess of One Thousand Dollars ($1,000) per year; and there is nothing in the record which would lead us to assume that he is not now capable of earning as much as he has in the past. Certainly, conditions are better now than they have been at any time in the past fourteen years, and maybe longer. KRS 403.060 provides:

"If the wife does not have sufficient estate of her own she may, on a divorce obtained by her, have such allowance out of that of her husband as the court considers equitable; * * *."

KRS 403.070 provides that, on a final judgment of divorce, the court may make orders for the care, custody, and maintenance of the minor children of the parties. No hard and fast rule can be prescribed for circumstances which shall be deemed equitable. Certainly, the value of the husband's estate should be taken into consideration, and in that connection the contribution which the wife has made to the earnings or accumulation of the estate. The present value of the husband's property, his productiveness, and his ability to earn money in the future likewise must be considered by the court; and equity cannot ignore the relative responsibility of the parties for the situation which culminated in the divorce. Lewis v. Lewis, 289 Ky. 615, 159 S. W. (2d) 995; Watkins v. Watkins, 202 Ky. 141, 259 S. W. 20. We are not familiar with any case wherein the evidence shows the wife to be entitled to more consideration than in this case. In Dayton v. Dayton, 290 Ky. 418, 161 S. W. (2d) 618, judgment of divorce was granted upon the fault of the husband. His estate was estimated to be worth Seventy-Five Hundred Dollars ($7,500), and it was shown that he had a good earning capacity. The wife, as in the instant case, was without any estate, in poor health, and untrained in a profession or business

in which to earn a living. The Court there held the wife to be entitled to a lump sum judgment of alimony in the amount of Twenty-Five Hundred Dollars ($2,500). In the case of Burns v. Burns, 173 Ky. 105, 190 S. W. 683, 687, where it was shown that the husband had acquired an estate of approximately Twelve Thousand Five Hundred Dollars ($12,500) during his married life, the amount of alimony was raised from Thirty-Five Hundred Dollars ($3,500) to Four Thousand Dollars ($4,000). Therein it was said: " * * * we think that both justice and equity dictate that it would be nothing short of extreme fairness to allow the wife as much as one-third of the property representing the accumulations during their married life, * * *."

Many other cases could be cited wherein an allowance equal to one-third of the accumulated estate was approved by this Court; in none of which, as we have heretofore indicated, was the showing made that the wife was entitled to more consideration than in the case presently before us. We are therefore of the opinion that the Chancellor should have allowed appellant alimony in a lump sum of Five Thousand Dollars ($5,000); and the judgment should have awarded the payment by appellee to appellant, for the maintenance of the three infants placed in her custody, the sum of Sixty Dollars ($60) per month, until such time as the appellee can show a change in conditions justifying a modification of this part of the judgment.

Wherefore, the judgment is reversed, with directions that it be set aside and another be entered in conformity with this opinion.