## Maynard v. Maynard.

June 17, 1949.

Rehearing denied December 2, 1949.

Wm. A. Young for appellant.

L. W. Morris and Marion Rider for appellee.

JUDGE REES—Reversing.

The appellee, Gladys Maynard, sued the appellant, Charles A. Maynard, for divorce on the ground of cruelty and asked that she be awarded custody of their child, Charles G. Maynard, who was about two years of age when the petition was filed on March 15, 1946. In her petition appellee asked for permanent alimony in the sum of $150 a month and maintenance for the child in a reasonable sum. It was alleged in the petition that appellant owned a house and lot in Frankfort, Kentucky, cash, securities and other assets, and an order of attachment was sought and obtained. After all the proof had been taken an amended petition was filed on April 9, 1947, alleging that appellant owned property of the approximate value of $30,000 which had been accumulated by the joint efforts of the parties, and appellee asked that in addition to any monthly allowance to her of alimony for herself and maintenance for the child she be awarded permanent alimony or compensation in a lump sum to the extent of at least one half of the property which stood in the name of appellant. The court granted appellee a divorce, awarded her custody of the child with right of visitation to appellant, adjudged that appellant should pay appellee the sum of $125 a month for the support and maintenance of the child, and that appellee recover from appellant the sum of $5,000 to be paid her in cash and the house in Frankfort, together with all the furnishings therein. It was also adjudged that appellee was the owner of an automobile which was licensed in her name and of certain United States Bonds of the cash value of $2,260.30. The value of the property awarded to appellee is $14,760.30 according to her, and $16,260.30 according to appellant. The difference is in the estimated value of the house and furniture by the parties. Appellant fixed the value of the house, less a $2,500 mortgage, at $5,500 and the value of the furniture at $2,000, while appellee valued the house at $5,000 and the furniture at $1,000. Appellant's net worth at the time the suit was instituted was, according to him, approximately $31,000. Appellee

fixed the value of all of appellant's property, real and personal, at $44,424.26, but when his indebtedness is deducted his net worth according to her estimate was approximately $34,000. Most of the difference is accounted for by the value placed on four certificates of Investors Syndicate which appellee valued at $2,800 and on which appellant placed no value. It is obvious that the court awarded to appellee approximately one-half of appellant's property. It is appellant's contention that the judgment is an award of lump sum alimony and is excessive; that the order directing the conveyance of the real estate contravened the provisions of KRS 403.-060(1); and that the award of $125 per month for the support and maintenance of the child is excessive. The appellee insists that the award was not in the nature of alimony but was merely a restoration of property to her on the theory that she contributed at least one-half to the operation of the business through which the property was accumulated; that even if the judgment be considered an award of alimony it is not excessive; and that the award of maintenance is not excessive in view of the cost of living, the condition of the child, and the ability of the appellant.

The appellant and appellee were married in 1937. The appellant was about 22 years of age and the appellee about 19 years of age. She was then employed as a clerk in a Five & Ten Cent Store at a salary of $10 a week. Shortly before the marriage appellant had purchased an amusement machine business, sometimes referred to in the record as the coin machine business. He testified that he bought the business about seven months before their marriage for $1,200, and had paid $900 of the purchase price in cash. The couple had no other resources at the time of their marriage. After residing with appellee's parents for a short while, the couple moved to a 2-room apartment on the Versailles Road near Frankfort. Appellant's brother moved in with them, apparently over the protest of appellee. After three or four months the couple was separated for a period of three or four weeks. They became reconciled, moved to a larger apartment, and in 1941 bought a house in the City of Frankfort. With the exception of the period of about eight months, when appellant was in the armed service, the couple continued

to reside there until 1945, although their relations apparently became strained. In August, 1945, a dispute arose between the parties over some War Savings Bonds which the appellee had taken from appellant's desk and placed in her bureau drawer. The majority of these bonds had been issued in the name of appellee, which appellant claims was done without his knowledge. The parties separated again in the autumn of 1945, but became reconciled and the appellee moved back to the home in Frankfort where they continued to live together until March, 1946, when the final break occurred. The incident which apparently brought about the argument resulting in the final separation was the report to appellant by his brother that he had seen the appellee driving in the country alone. The appellee testified that she was visiting her parents, and that her father asked her to drive to a store to get some tobacco canvas for him. When she returned home the appellant, without asking for any explanation, began cursing her and told her that he had sold the business and wanted a divorce. She further testified that throughout most of their married life appellant had been unkind to her and neglectful; that he refused to take her out; and frequently stayed away from home very late at night, and was attentive to other women. Appellant testified that their married life was normal, and that disputes which arose between them were caused chiefly by the appellee's extravagance. The appellee had a right to draw checks on his bank account which he said she did excessively. She had an automobile at her disposal at all times, and made frequent trips to Louisville and Lexington. A large amount of proof was taken by each party, and that of appellee was amply sufficient to authorize the judgment of divorce in her favor. There was no proof of any dereliction on her part other than the unsupported claim of appellant that she was quarrelsome and extravagant.

We are concerned only with the questions of alimony for the wife and maintenance for the child. The claim that the property owned by appellant was accumulated through the joint efforts of the parties and that appellee participated actively in the operation of the business contributing as much effort as appellant to its success, thus constituting her the owner of one-half of

the property and entitling her to its restoration, is not sustained by the record. Appellant operated the coin machine business with the assistance of his brother and one or two mechanics. He owned victrolas, vending machines, pin ball machines and other amusement contrivances which were placed in various business establishments in Frankfort and vicinity. Appellant received as rental a percentage of the coins placed in these machines. It was his duty to service the machines, and the lessee notified him when servicing was required. He was usually notified by telephone, and appellee claims she remained at home and received these calls. She also typed small title slips for phonograph records. The duties performed by appellee, though helpful, were not such as to constitute her part owner of the business. In the cases relied upon by appellee in which the wife was adjudged a joint owner of the real estate or business, either the husband had conveyed the real estate to the wife and she had been an equal participant in the operation of the business or the wife had contributed equally with the husband in the purchase of the real estate or business. In Powers v. Powers, 307 Ky. 475, 211 S. W. 2d 687, the husband conveyed a small farm worth between $800 and $1,500 to his wife. After 38 years of married life the parties separated, and the farm with the livestock and implements constituted their entire estate, which the chancellor divided equally. The parties reared a large family, and the evidence showed that without the contribution of labor which the wife had made the husband would not have been able to preserve the small estate. In affirming the judgment, this court said:

"Under these circumstances, we are of the opinion that appellee has contributed to what little estate the parties now are in possession of to such an extent that she should be adjudged to be the owner of one-half thereof."

In Bell v. Bell, 299 Ky. 7, 184 S. W. 2d 124, the parties separated after 31 years of married life, and an award of one-half of the husband's real estate to the wife was upheld not as lump sum alimony but as a mere restoration to the wife of the real estate obtained from her by the husband during the marriage. It appeared that the wife taught school during most of her

married life, and that she and her husband had contributed equally from their earnings to the purchase of the real estate. In Tutt v. Tutt, 304 Ky. 480, 200 S. W. 2d 924, the chancellor adjudged the wife a one-half interest in the real estate and personal property, and the judgment was affirmed. There, the real estate had been conveyed to the husband and wife jointly, and the evidence showed that the parties treated their accumulations as joint property from the date of their marriage. The state of facts presented by the record before us is wholly dissimilar to that of any of the foregoing cases. The record pictures the usual and customary marriage relationship in so far as the husband's business is concerned, with the wife attending to the household duties and assisting the husband in the minor details of his business as the occasion demanded. The award by the chancellor was necessarily a lump sum as alimony and not a restoration of property pursuant to section 425 of the Civil Code of Practice. It follows that the Chancellor erred in awarding to appellee the house and lot of appellant and directing that a deed of conveyance be executed and delivered to her, since KRS 403.060(1) provides:

"If the wife does not have sufficient estate of her own she may, on a divorce obtained by her, have such allowance out of that of her husband as the court considers equitable; but no such allowance shall divest the husband of the fee simple title to real estate."

Piersall v. Piersall, 302 Ky. 486, 194 S. W. 2d 627.

Viewed as alimony, we think the allowance made by the chancellor is excessive, at least to the extent of the value of the house and lot. In lieu of the furniture, the chancellor should award to appellee the sum of $2,000, the value placed on it by appellant. Thus, with the real estate eliminated, the award of alimony amounts to about $11,000, or approximately one-third of appellant's net estate. This is in accord with our holdings in previous cases where the facts were somewhat similar. Goodwin v. Goodwin, 296 Ky. 835, 178 S. W. 2d 214; Dayton v. Dayton, 290 Ky. 418, 161 S. W. 2d 618; Stewart v. Stewart, 272 Ky. 97, 113 S. W. 2d 842; Hartkemeier v. Hartkemeier, 248 Ky. 803, 59 S. W. 2d 1014.

The award of $125 a month for the maintenance and support of the child, who was three years of age when the divorce was granted, is excessive. The evidence as to appellant's present earnings is indefinite. Shortly before the final separation appellant sold his coin machine business for $19,000 cash, and this fund which was on deposit in a Frankfort bank was attached along with other funds and property. Appellant purchased for $12,000 a wholesale candy business in Frankfort, and the attachment was released to that extent in order that he might pay for the newly purchased business. Appellee testified that in her opinion appellant was earning $250 a month in the new venture, but this was mere surmise on her part. Appellant testified that his income did not exceed $150 to $200 a month. We are of opinion that an allowance of $50 a month is amply sufficient to maintain the child when his age is considered, and is compatible with the ability of the father and the needs of the child. This allowance should be made effective as of the date of the original judgment, to wit, May 17, 1947.

The judgment is reversed with directions to enter a judgment in conformity with this opinion.